```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY


STEPHEN OMOGBEHIN,        .      Case No.  06-4581 (JEI)
                          .
                          .
            v.            .      1 John F. Gerry Plaza
                          .      4th & Cooper Streets
                          .      Camden, NJ 08101
MARI CINO, Acting         .
Secretary, Department     .
of Transportation,        .
                          .
            Defendant.    .
                          .      May 21, 2009
. . . . . . . . . . . ..         11:15 a.m.


                 TRANSCRIPT OF STATUS CONFERENCE
                BEFORE HONORABLE JOEL SCHNEIDER
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:        DENNIS L. FRIEDMAN, ESQ.
                          1515 Market Street
                          Suite 714
                          Philadelphia, PA  19102

For the Defendant:        Office of the U.S. Attorney
                          By:  KAREN H. SHELTON, ESQ.
                          402 East State Street #430
                          Trenton, NJ  08608


Audio Operator:           Sarah Kilborn
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311     Fax No. (609) 587-3599**

2

```
 1              THE COURT:  Good morning.  Please be seated.

 2  We're on the record.  This is the matter of -- excuse me

 3  if I mis-pronounce the name -- Omogbehin versus Cino, 06-

 4  4581.  That's the docket number.  Can we please have the

 5  entries of appearance starting with the plaintiff?

 6              MR. FRIEDMAN:  Dennis L. Friedman, attorney for

 7  plaintiff.

 8              MS. SHELTON:  Assistant United States Attorney

 9  Karen Shelton for the defendant.

10              THE COURT:  Okay.  Counsel, we're here to

11  address the letters I received from counsel on some case

12  management issues.  Mainly they involve, as the Court

13  understands it, the service of plaintiff's expert report.

14  The defendant has raised two issues.  One is the

15  timeliness of the service of the report, and more

16  important, the substance of the report.  With regard to

17  the timeliness, Ms. Shelton, if you want to be heard I'll

18  hear you, but if the report was only filed a day or two

19  late there's does not appear to be prejudice as a result

20  of the timing.  I really don't think we need to spend much

21  time on that issue, but I understand your objection is

22  more to the substance and the nature of the content of the

23  report, and we can deal with that.  Do you want to be

24  heard on the timing issue?

25              MS. SHELTON:  That's fine, Your Honor.  It's
```

1   certainly within your discretion to decide whether or not

2   to strike it for timeliness.

3           THE COURT:  Okay.  So, let's -- the Court's

4   ruling on the timeliness issue is that -- we will deem the

5   report to be timely served.  But let's deal with the more

6   important substantive issue.  Here's the issue as I

7   understand it.  Ms. Shelton, it's your application?

8   Correct me if I'm wrong.

9           MS. SHELTON:  That's correct.

10          THE COURT:  Your argument is that the Court had

11  set a deadline to file a spoliation motion.  That deadline

12  passed.  In effect what we have here is a spoliation

13  expert report.  And that's not an appropriate subject of

14  expert testimony at the trial of this case.  Is that a

15  fair summary of your argument?

16          MS. SHELTON:  Essentially, Your Honor.  The

17  expert report, in fact, sort of rehashes issues that were

18  raised and addressed by this Court in a prior motion to

19  compel and motion for reconsideration, and also raises the

20  spoliation issue, so it's --

21          THE COURT:  What about Mr. Friedman's argument

22  that there were developments subsequent to the Court's

23  rulings that are addressed in this expert report?

24          MS. SHELTON:  I'm not sure in particular what

**J&J COURT TRANSCRIBERS, INC.**

4

1  your -- it's in reference to, but if it's to the discovery

2  that was produced at the end of discovery, frankly whether

3  or not that could or should have been turned over sooner

4  doesn't change the fact that plaintiff is now in

5  possession of it and I see no reason why something that he

6  possesses could -- I don't see how that could be the

7  subject of the spoliation motion, which by its very nature

8  would be evidence it's no longer in existence.  But I

9  don't dispute that we did produce some additional things

10  at the very end of discovery.  At the time we had an

11  application to extend discovery pending so that I could

12  address some things to determine whether or not they had

13  been turned over.

14        There was a prior counsel in this case.  I had

15  some difficulty determining what had and hadn't been

16  turned over because it had not been Bate stamped.  I erred

17  on the side of disclosure and turned over as much as I

18  thought might not have been turned over prior, previously

19  on the last day of discovery.

20        To the extent that Mr. Friedman believes these

21  could have or should have been turned over sooner, or

22  during the administrative proceedings, this isn't a rehash

23  to the administrative proceedings.  This is discovery that

24  he requested and he's now received.  I don't see how that

25  is the subject of dispute, but perhaps he can speak to

**J&J COURT TRANSCRIBERS, INC.**

5

1  what in particular his issue is with the discovery that

2  was produced at the end of discovery.

3          THE COURT:  I think we need to, at least the

4  Court needs to understand better, and we'll discuss this

5  in detail, what the purpose of this report is.

6          MS. SHELTON:  Your Honor --

7          THE COURT:  If the report is information --

8  relevant information existed at one time that no longer

9  exists, that's a spoliation issue.  It's not clear to the

10  Court what the purpose of this report is.

11          MS. SHELTON:  Well, Your Honor, I read it both

12  as being that, and I'm prepared to go through it section

13  by section what his claim is, and how those issues have

14  already been addressed by the Court in prior motions to

15  compel.

16          THE COURT:  Well, I think where we ought to

17  start, let's now turn the floor to Mr. Friedman and get a

18  better understanding of what the purpose of this report is

19  because I'm not entirely clear whether it's spoliation or

20  some other purpose.  So, let's hear from Mr. Friedman now.

21  What is the purpose of this expert report?  And what are

22  the conclusions in the report?  And what do you want your

23  expert to testify to at trial?

24          MR. FRIEDMAN:  The purpose of the report is to

25  identify, number one, Mr. Omogbehin, who was hired as an

**J&J COURT TRANSCRIBERS, INC.**

6

1   IT expert, as an expert for trial purposes.  He would be

2   testifying to matters which may not be in within the

3   purview --

4           THE COURT:  Okay.  Let's get over that.  I'm

5   more worried about the substance of the testimony.  What

6   does he propose to say?

7           MR. FRIEDMAN:  With regard to the document he

8   will show, for instance, that the archival evidence shows

9   that his files were not produced, although there were

10  files produced of other individuals in the same archival

11  area.

12          THE COURT:  But -- okay.  That's the first

13  point.  Okay.  Let's discuss that.  Why is that a trial

14  issue and not a discovery issue?

15          MR. FRIEDMAN:  It's a trial issue because the

16  jury would then have knowledge of steps that were taken by

17  the defendant to withhold or possibly destroy evidence

18  which was important in the defense of the --

19          THE COURT:  But isn't that a spoliation issue?

20          MR. FRIEDMAN:  It is a spoliation issue, and it

21  is also, in my opinion, an issue that the jury could

22  consider.  Where is the evidence that was there at the

23  time that was material to the issues in the case that was

24  asked for at the time of termination and is no longer

25  there?  And I -- my understanding is that that is an issue

**J&J COURT TRANSCRIBERS, INC.**

1 that the jury could consider.

2          THE COURT:  Are you asking for a negative

3 inference?

4          MR. FRIEDMAN:  Yes.

5          THE COURT:  Isn't that a spoliation issue?

6          MR. FRIEDMAN:  That is also a spoliation issue.

7 Correct.  But the jury, on its own, could draw negative

8 inferences even without the Judge's ruling on that issue.

9 That is my understanding.  But there is one matter that is

10 the foundation for this argument, and the matter is that

11 there was an order issued requiring plaintiff to file a

12 spoliation motion as of a particular date.  And I'm not

13 quite sure what that order was, and when it was issued.

14          THE COURT:  We're not there yet.

15          MR. FRIEDMAN:  Okay.

16          THE COURT:  I want to start with the substance

17 of this report and its purpose before we get to the

18 timeliness and lateness issue.  The most important issue

19 to the Court now are the substantive issues.  Why -- and I

20 still don't have my arms around it, Mr. Friedman.  This

21 issue comes up frequently.  The plaintiff says documents

22 exist that should have been produced in discovery that

23 weren't produced, so frequently spoliation motions are

24 filed.  I rule on them.  Then we get to trial and you want

25 to argue to the jury that there should be documents

8

1   produced that weren't produced, and you ask the Judge to

2   give the jury a negative inference instruction.  And

3   that's up to the Judge to decide.

4        MR. FRIEDMAN:  Not only that, but I could argue

5   to the jury without having an instruction by the Judge.

6   And my understanding of advocacy is that not every point

7   that is raised before the jury is something to which a

8   specific charge correlates.

9        THE COURT:  So, you're proposing a trial within

10  a trial?  Not only is the jury going to evaluate the

11  merits of your client's claim, but the jury also has to

12  evaluate the spoliation issue?

13       MR. FRIEDMAN:  No.  We would be arguing to the

14  jury based on the hard core facts the credibility of

15  witnesses, the conduct of the parties, the presence or

16  lack of presence of evidence in the face of being on

17  notice.  When Mr. Omogbehin was terminated, the day after

18  he was terminated he had given a laundry list of specific

19  items that he asked to be retained.  And we would

20  certainly argue that the absence of certain documents or

21  electronic data is a significant factor.

22       For instance, and this would be part of our

23  spoliation motion, the agency produced a back up tape

24  claiming that the back up tape contained all of the

25  historical information in electronic form.  The back up

1 tape was dated April 22nd of 2004.  Mr. Omogbehin was

2 terminated on April 23rd.  Now, there was significant e-

3 mail information that he contended existed relating to his

4 termination on the date of his termination.  When he gave

5 a list -- when he gave what was essentially a pro se

6 litigation hold letter to the agency on April the 27th,

7 which was the Monday after the Friday of his termination,

8 or the Thursday of his termination, he specifically stated

9 that he wanted the back up tape as of that date.  The

10 agency does not have that back up tape, which means that

11 all of the valuable information on April 23rd, the date of

12 his termination, is no longer in existence.

13          THE COURT:  What's on that tape that is so

14 relevant to this case?

15          MR. FRIEDMAN:  Everything connected with the

16 back and forth communications between agency personnel,

17 human resources, the person who was involved in the actual

18 termination decision of the questions why this was

19 happening, and --

20          THE COURT:  Are those --

21          MR. FRIEDMAN:  -- whether it should have been

22 pulled back.

23          THE COURT:  Are those e-mails with your client

24 or internal e-mails of the defendant?

25          MR. FRIEDMAN:  These are internal e-mails of the

1  defendant.

2          THE COURT:  Are you surmising that they exist?

3          MR. FRIEDMAN:  Yes.

4          THE COURT:  Or do you have evidence that they

5  exist?

6          MR. FRIEDMAN:  I --

7          THE COURT:  The back up tape -- let's assume

8  you're right, and I don't know if you are right.  Let's

9  assume for the sake of argument you're right.  They didn't

10 produce any e-mails, say, the week before your client was

11 let go.  Let's just assume for the sake of argument that's

12 right.  How do we know they existed at one time?

13         MR. FRIEDMAN:  Because we have a history of e-

14 mails up to the date of the termination, the consistent

15 pattern of e-mails.  And in addition to that we can show

16 that the agency did, in fact, have the back up tape

17 because when they gave us the CDs which purportedly

18 contained everything on the April 22nd back up tape, there

19 were e-mails for April the 23rd.  There was a smattering

20 of e-mails from April the 23rd showing that they could not

21 have used the back up tape from April 22nd, which is what

22 everyone represented they use in order to respond to

23 discovery in order to create the --

24         THE COURT:  So, let me ask you this, Mr.

25 Friedman.  You want to present this evidence to the jury

**J&J COURT TRANSCRIBERS, INC.**

1  at trial?  The jury is going to decide whether there was a

2  proper termination of your client, and you're going to

3  present all this evidence about all of these back up

4  tapes, and deletions, and etcetera, etcetera, as part of

5  the trial?  That's what you're proposing?

6       MR. FRIEDMAN:  Your Honor, I understand, and

7  this was communicated with great clarity at the hearing of

8  February the 21st of 2008.  Ms. Shelton recently ordered a

9  copy of that transcript.  We also purchased a copy of the

10 transcript.  I believe the Court has it, but if not I

11 would be happy to provide the Court with a copy.  And in

12 that hearing you made it clear that you wanted to get to

13 the substance of the case.  We're prepared with the

14 substance of the case.  We intend to file a motion for

15 summary judgment based on the substance of the case on

16 June 19th if that date still holds based on substance,

17 based on facts, based on events, and in addition argue

18 that the conduct of the agency suggests that the agency

19 was intentionally withholding information that was

20 critical to Mr. Omogbehin in addition to the substantive

21 information which would support the fact that the --

22       THE COURT:  That's a spoliation issue.  Right?

23 So, let's put aside the timeliness issue.  Let's just put

24 aside the timeliness issue for a second.  Why shouldn't

25 this Court order the plaintiff to file a spoliation

1  motion?  I'll rule on the motion.  I'll evaluate the

2  arguments.  I'll evaluate the law.

3           MR. FRIEDMAN:  Okay.

4           THE COURT:  I'll decide whether or not there's a

5  negative inference or not.

6           MR. FRIEDMAN:  Okay.

7           THE COURT:  You want to appeal it, you'll appeal

8  it, but then the issue doesn't come up at trial.

9           MR. FRIEDMAN:  We would be happy to.  And might

10 I add, Ms. Shelton got involved in the case not at the

11 outset, and at the February 21st, 2008 hearing you had

12 asked whether the agency had supplied an image of his

13 laptop.  She said that she believed so.  Upon -- and I'm

14 conjecturing here because I got a letter from her dated

15 May 6th of this year, just a few weeks ago, with a copy of

16 a hard drive containing the mirror image because Mr.

17 Omogbehin had never received a mirror image of his hard

18 drive.  There is an issue dealing with that, and that is

19 the company that had been contracted to do the hard drive

20 has a software program which, in order to read the hard

21 drive which contains the mirror image either costs $3,600

22 to purchase or $5,300 to purchase for Mr. Omogbehin.  Mr.

23 Omogbehin has stated that there's an extremely easy

24 process, and a software --

25           MR. OMOGBEHIN:  $70.


                    **J&J COURT TRANSCRIBERS, INC.**

1          MR. FRIEDMAN:  -- $70 software program that can

2    be used to obtain the mirror image of his laptop or

3    desktop computer.  And we were given a -- we were given a

4    device, which it's a hardware device just a few weeks ago,

5    and in order for us to even access the information on it

6    he would be required to spend at least $3,600 in order to

7    get a software program.

8          THE COURT:  And you have an alternative that

9    would only cost $70?

10          MR. FRIEDMAN:  That is correct.

11          THE COURT:  And I have to tell you, Mr.

12    Friedman, that if that is accurate I would be shocked if

13    Ms. Shelton would not attempt to accommodate you.  But

14    have you raised this issue with her before?

15          MR. FRIEDMAN:  No, I did not, and I apologize to

16    Ms. Shelton.  When I got here we had discussed one other

17    issue and that was the second issue that I intended to

18    discuss with her, and I went off to talk to my client

19    about the issues --

20          THE COURT:  Mr. Friedman, if I look at Page 19

21    of your expert report it appears to the Court that the

22    penultimate conclusion of your client is that, "defendant

23    engaged in willful and deliberate spoliation of evidence."

24          MR. FRIEDMAN:  Yes.

25          THE COURT:  That's what you want your client to

1  opine at trial, right?

2        MR. FRIEDMAN:  No.  No.  That is not what I

3  want, and I apologize, I did not write the report.  He

4  did.  I had indicated to him that he needed to identify

5  the areas of expertise, and what disciplines he would be

6  applying.  That -- what he has is something that a lawyer

7  arguing to a Judge or a jury would be doing.  His only

8  purpose is to be able to interpret the electronic data,

9  and then it's up to a lawyer to fashion whatever

10 information comes from him to reach the conclusion that

11 there was an intentional -- there were intentional acts

12 designed to destroy or withhold evidence, or that based on

13 his interpretation of the electronic data that the jury

14 can understand the sequencing of events and the

15 communications between people and when they occurred.

16        THE COURT:  And that's all for the ultimate

17 purpose of you arguing to the jury that the jury should

18 infer that relevant evidence was destroyed?

19        MR. FRIEDMAN:  My argument would be that the

20 agency discriminated against Mr. Omogbehin, and in

21 fashioning that argument I would list a number of factors,

22 substantive factors, factors relating to the conduct of

23 the parties.  I mean, it's a whole host of things.

24        THE COURT:  Okay.

25        MR. FRIEDMAN:  But the ultimate burden is to

**J&J COURT TRANSCRIBERS, INC.**

1  argue that there was a discriminatory termination.

2          THE COURT:  Absolutely.  No one has any argument

3  about that.  But what we're talking about is your client

4  is going to -- you propose that your client testify at

5  trial that the back up tape was destroyed, and we know it

6  existed because we have this printout of this data?  I'm

7  just very perplexed by that.

8          MR. FRIEDMAN:  Okay.  Well, that is going to be

9  straightforward testimony.  The jury would be presented

10 with facts that after his termination he gave a litigation

11 hold letter.

12         THE COURT:  Okay.

13         MR. FRIEDMAN:  The litigation hold letter

14 identified certain items.

15         THE COURT:  I'm with you.

16         MR. FRIEDMAN:  And that there had been

17 communications by and between various agency personnel up

18 to the date that they provided us with information, and

19 that there is an absence of information which the

20 plaintiff had requested.

21         THE COURT:  So, why do you need an expert for

22 that?

23         MR. FRIEDMAN:  Well, no.  That is -- you are

24 right.  And I told Mr. Omogbehin that you don't need an

25 expert for the spoliation issue dealing with the fact that

**J&J COURT TRANSCRIBERS, INC.**

1  he requested a tape on a particular date.  But you -- to

2  err on the side of caution I had wanted to identify him as

3  an expert in areas of mirror images, although I believe

4  that that will be resolved with Ms. Shelton.  But he at

5  least has to explain to the jury what a mirror image is.

6  And since he's an IT expert --

7            THE COURT:  Why does that mirror image issue --

8  why is that relevant to the case, this mirror image issue?

9            MR. FRIEDMAN:  Because the whole case

10 encompasses electronic communications.  He was the IT

11 expert.  Everything was done via e-mail.

12           THE COURT:  But listen, Mr. Friedman, your

13 client gets up on the stand and says I sent the litigation

14 hold the day after I was fired.  There should have been --

15 we know there was a history of e-mail communications

16 amongst the defendants.  I did not get any of those e-

17 mails, period.  Why does he have to get into mirror image

18 issues?

19           MR. FRIEDMAN:  Because it's more than --

20           THE COURT:  Those are facts.  Those are facts.

21           MR. FRIEDMAN:  There is no question about that.

22 But he has to show, for instance, that when an agency

23 makes an allegation that Mr. Omogbehin did not participate

24 in the creation of a document which supposedly was

25 essential, and he has information in the electronic file

**J&J COURT TRANSCRIBERS, INC.**

1   showing that he was the author of that document, and that

2   he made revisions and he e-mailed that --

3          THE COURT:  That's a different issue.  That is

4   different than spoliation.

5          MR. FRIEDMAN:  That is true.  But in order for

6   him to present to a jury the sequencing of events he has

7   to get into issues such as metadata.

8          THE COURT:  Okay, Mr. Friedman, maybe I'm

9   starting to understand what you're saying a little bit.

10  On the one hand we have the spoliation issue.  That's what

11  your client talks about on Page 19, that the defendant

12  engaged in willful and deliberation spoliation of

13  evidence, destruction of evidence.  But now, if one of the

14  fact issues in the case is whether or not your client

15  worked on a particular document, and the defendant says no

16  and you say yes, and your expert, by looking at the data,

17  can give an opinion that this evidence is that I worked on

18  it, that's a different issue.  That's not a spoliation

19  issue.

20         MR. FRIEDMAN:  You are correct.  And what I was

21  explaining to you is why he would be testified as an

22  expert and what his importance is.

23         THE COURT:  But then what we need to do is we

24  need to clarify precisely what opinions your client

25  proposes to give at trial because in this report, as I

1  read it, you can -- if you want to show me something else,

2  okay, I turn to the conclusion section, the only

3  conclusion is that there was destruction of relevant

4  evidence.  That's a spoliation issue.  It seems to the

5  Court that that should be dealt with on a motion.  But if

6  your client wants to give an opinion that I'm analyzing

7  this electronic data and because of my expertise I can

8  show why there's evidence that I worked on it contrary to

9  the defendants, that's a different story.

10          MR. FRIEDMAN:  That is correct.

11          THE COURT:  So, we need to identify what's

12  spoliation and what's, you know, the classic opinion

13  testimony.  Okay.  Let's stop there and let's now turn to

14  Ms. Shelton and see what some of her thoughts are as to

15  what we'll be hearing from Mr. Friedman.

16          MS. SHELTON:  Your Honor, there are a lot of

17  issues raised that I would like to address.  I'm trying to

18  determine what would be the most appropriate to address

19  first.  I would agree that a motion for spoliation would

20  be appropriate in this case.  I would also take issue with

21  plaintiff's counsel that he would be able to argue to the

22  jury that relevant evidence was destroyed without this

23  Court having made that finding first --

24          THE COURT:  Okay.  I understand that.

25          MR. SHELTON:  -- because he has to show,

1  obviously, more than he asked for things and they weren't

2  given to him in order to get that inference, in order to

3  talk to the jury about that.  He has to show more than

4  that.

5           THE COURT:  That's an interesting issue you

6  raise, Ms. Shelton, and this Court is not going to decide

7  that.

8           MS. SHELTON:  That's fine.  That was on

9  spoliation --

10          THE COURT:  I wonder if there's a difference

11 between that -- I don't know the answer to this.  I wonder

12 if there's a difference between getting a negative

13 inference instruction at trial and the plaintiff getting

14 up on the stand at trial and saying I don't have any e-

15 mails from Mr. X, Y, Z or Ms. X, Y, Z the week before I

16 was fired.  Draw your own conclusions from that.

17          MS. SHELTON:  I would argue a couple of points

18 to that, Your Honor.  I would move to strike any testimony

19 regarding that where this Court has specifically ruled

20 that plaintiff has received all the e-mails in this case,

21 both on the motion to compel and on the motion for

22 reconsideration.  And I'm prepared to go into the minutiae

23 of that right now, and bring it up again if we need it.

24          THE COURT:  I don't think this is the

25 appropriate time to decide --

**J&J COURT TRANSCRIBERS, INC.**

20

1          MS. SHELTON:  Okay.

2          THE COURT:  -- the merits of those issues.

3          MS. SHELTON:  But on that basis that's why I

4  would prefer that the spoliation motion be briefed so that

5  I have that opportunity to argue it, and if this is still

6  an issue even after our motion for spoliation I would move

7  to strike any testimony about that --

8          THE COURT:  Okay.

9          MS. SHELTON:  -- because I believe that there

10 has been a finding of this Court that we have produced the

11 e-mails that he's seeking, and that it would be

12 prejudicial to the defendant for him to argue essentially

13 a de facto spoliation inference where the Court has found

14 otherwise.

15         THE COURT:  And Judge Irenas is going to decide

16 the trial issue.  But, Mr. Friedman, can you answer this

17 question?  Are you taking the position that there should

18 be a negative inference at trial because of the

19 destruction of evidence?

20         MR. FRIEDMAN:  That is the ultimate aim of a

21 spoliation motion.  Now --

22         THE COURT:  Can you answer my question?  That's

23 what I want to know because --

24         MR. FRIEDMAN:  Okay.

25         THE COURT:  -- if that is what you want, I'm

1 going to order that you file a spoliation motion and I'm

2 going to decide that issue.  And you can do with that

3 ruling what you want.  If you want a negative inference

4 because of the destruction of discovery, that's a

5 spoliation motion.  That should be filed.  I know there

6 was -- there may or may not have been a prior deadline.

7 If you want that negative inference I'm going to give you

8 leave to file that motion.  I'm going to decide that

9 issue.  Is that what you want at trial, a negative

10 inference because of -- do you want the Judge to instruct

11 the jury on this negative inference because of the

12 destruction of relevant evidence?

13            MR. FRIEDMAN:  Yes, of course, as an advocate,

14 any advocate in the position that I'm in would.

15            THE COURT:  Then I'm going to order you to file

16 -- we'll talk about timing, but I'm going to order you to

17 file a spoliation motion and I'm going to decide the

18 issue.  And then what you do with that issue is up to you.

19 If you appeal it, and how Judge -- if it's not appealed

20 how Judge Irenas uses it at trial is up to him.

21            MR. FRIEDMAN:  Your Honor, I understand, and you

22 keep -- you're making me kind of queasy when you said that

23 I can appeal it, the inference being the agency can feel

24 comfortable in your ruling but I may want to appeal.

25            THE COURT:  Of course not.

**J&J COURT TRANSCRIBERS, INC.**

22

1          MR. FRIEDMAN:  Okay.

2          THE COURT:  I haven't even seen the evidence

3 yet.

4          MR. FRIEDMAN:  Okay.  But I --

5          THE COURT:  Of course not, Mr. Friedman.

6          MR. FRIEDMAN:  -- mean, it's, like, the second

7 or third time that you had mentioned that plaintiff can

8 appeal it, and it makes me --

9          THE COURT:  Defendant can appeal it, too.  Of

10 course, Mr. Friedman.

11          MR. FRIEDMAN:  Okay.

12          THE COURT:  I have to see the evidence.  I have

13 to see the arguments.

14          MR. FRIEDMAN:  Yes.

15          THE COURT:  I --

16          MR. FRIEDMAN:  The --

17          THE COURT:  If I gave you that impression, Mr.

18 Friedman, it was the wrong one.  I specifically said to

19 Ms. Shelton I'm not addressing the merits of the issues

20 today

21          MR. FRIEDMAN:  The evidence will be crystal

22 clear, and -- crystal clear from the plaintiff's

23 perspective and also apparently from the defendant's

24 perspective.

25          THE COURT:  But this is what I think you need to

**J&J COURT TRANSCRIBERS, INC.**

23

1 do, Mr. Friedman.  I think you need to revise your expert

2 report, because as framed now it's only a spoliation

3 expert report.  If you want to have some other issue for

4 trial, you ought to clarify that.

5                 MR. FRIEDMAN:  All right.

6                 MS. SHELTON:  Your Honor, do I take it that

7 you're giving him leave to file an amended expert report?

8                 THE COURT:  Yes, I am doing that because we have

9 to get to the bottom of this, and I want to straighten

10 this out before this case goes to Judge Irenas before

11 trial.  It appears that it was Mr. Friedman's intent and

12 plaintiff's intent to address a non-spoliation issue.  For

13 all I know, Ms. Shelton, it may already be in here.  I

14 don't know.

15                 MS. SHELTON:  Your Honor, to that point there

16 was some discussion between plaintiff's counsel and the

17 Court about what he calls a substantive matter in the

18 case, saying that, you know, there was a document that he

19 say he did work on, that he could show that he worked on,

20 that doesn't come up anywhere in this expert's report at

21 all.  I mean, the substance of this expert's report --

22                 THE COURT:  Is that an issue you want to raise?

23                 MR. FRIEDMAN:  That was used as an example just

24 as we would use as an example of the fact that the

25 terminating official indicated that she worked on

**J&J COURT TRANSCRIBERS, INC.**

24

1  documents and that she created documents on her own

2  without the input of the plaintiff or others.  We are not

3  committing ourselves to specific facts.  There are a

4  number of facts which we will lay out in our motion, in

5  our statement of facts, in our pretrial submission.  This

6  case has a long history.  It went through the

7  administrative process.  There were three days of

8  administrative hearing.  There is an extensive record.

9  There was extensive discovery, and extensive -- at the

10 administrative level it was limited.  There was extensive

11 discovery, as you well know, here, and there have been a

12 lot of controversies as a result of the discovery at the

13 Court level.

14         MS. SHELTON:  Your Honor, I hesitate because I'm

15 afraid what I'm going to say a spoliation is what we could

16 or should have done in the administrative proceeding,

17 which frankly shouldn't be a part of this case.  This is a

18 rehash of whatever discovery disputes he had at the

19 administrative level.  I can't really speak to that, Your

20 Honor.  I can address what was requested of us here, and

21 what I've turned over and what I haven't turned over.  You

22 know, I don't -- I just -- my warning flag goes up when he

23 talks about the extensive discovery disputes at the

24 administrative level because I'm afraid what's going to

25 happen here is that it's going to devolve into a dispute

1  about what was or wasn't done at the administrative level.

2          MR. FRIEDMAN:  Your Honor, you gave plaintiff

3  leave of Court in order to conduct discovery at its own

4  expense, and it was at a considerable expense, in order to

5  determine whether the back up tapes that had been

6  represented placed on CDs contained all of the

7  information.  During that discovery process I questioned

8  the agency counsel at the administrative proceedings, Jay

9  Fox, and I have on the record specific information

10  relating to the information that he acknowledges had been

11  requested at the administrative level.  This is a de novo

12  proceedings.  At the administrative level there are strict

13  time frames.  The Administrative Judges, the EEOC, decide

14  cases on a pretty prompt basis and there is not extensive

15  discovery in the EEO process.  But this is a de novo

16  proceeding.

17          THE COURT:  You can sit down, counsel.  I've

18  heard enough on this issue and the Court is prepared to

19  rule on the issue.  With regard to the timing issue the

20  Court overrules the defendant's objection.  At most the

21  report was filed a day or two or three late.  There was no

22  prejudice, and so we're not going to bar the report on the

23  grounds of timeliness.

24          I am going to retract a statement I just made.

25  I am not granting plaintiff leave to submit a new expert

1   report.  By June 15th plaintiff is ordered to file a

2   spoliation motion.  If plaintiff is arguing that there

3   should be a negative inference or any type of inference at

4   trial that relevant evidence was destroyed, that has to be

5   addressed in plaintiff's spoliation motion to be filed by

6   June 15th.  In connection with that motion if plaintiff

7   wants to rely upon its expert report, it's free to do

8   that.  If plaintiff wants to clarify the statements in the

9   expert report it already submitted, it's granted leave to

10  do that.  Plaintiff is not granted leave to supply any new

11  opinions that are not already expressed in the expert

12  report that was submitted by the Court's deadline.  So, if

13  the issue that you talked about, Mr. Friedman, was not

14  addressed in this report, the Court will not permit that

15  to be addressed in a new, amended expert report.  But that

16  being said, Mr. Friedman, I'm not ruling on whether or not

17  that's an expert or a fact issue.  You can address that

18  issue with Judge Irenas at trial.  It may be that Judge

19  Irenas could determine that that's not an expert opinion.

20  That's up to him to decide.

21          MR. FRIEDMAN:  And, Your Honor, if I may?  The

22  purpose of identifying Mr. Omogbehin was a witness is to

23  explain IT principles to a jury so that the jury would

24  have an understanding, and that's why it was important for

25  him to be qualified as an expert in this case.

**J&J COURT TRANSCRIBERS, INC.**

1            MS. SHELTON:  Your Honor, I just want to make

2    sure that I understand and I clarify what I'm going to --

3    what's going to be at issue here.  Plaintiff is going to

4    file a spoliation motion, and this expert opinion can

5    support that motion for spoliation?

6            THE COURT:  Correct.

7            MS. SHELTON:  Okay.  Has the Court made any

8    ruling with whether or not to accept this expert's report

9    for the purposes of trial?

10            THE COURT:  No.

11            MS. SHELTON:  Okay.

12            THE COURT:  That's not for this Court, Ms.

13   Shelton.  That will be Judge Irenas.

14            MS. SHELTON:  Okay.

15            THE COURT:  I'll decide whether to use the

16   report for purposes of the spoliation motion.

17            MS. SHELTON:  Okay.  So, the report may be

18   amended or clarified as it relates to spoliation issues?

19            THE COURT:  As it relates to --

20            MS. SHELTON:  -- for the spoliation motion?

21            THE COURT:  The report may be clarified in any

22   manner so long as it only addresses the issues that are

23   already contained in this report.  I don't know if this

24   report contains anything in it relevant to an issue other

25   than spoliation.  I don't know.  I didn't study it in

**J&J COURT TRANSCRIBERS, INC.**

28

1  detail.  If it only addresses spoliation, then that's the

2  only issue that can be clarified.

3          MS. SHELTON:  And also to clarify, Your Honor,

4  if plaintiff does ultimately amend or clarify this

5  expert's report with respect to what's already in it, will

6  that then be the expert's report that would be considered

7  --

8          THE COURT:  For trial.

9          MS. SHELTON:  -- by Judge Irenas?

10          THE COURT:  Yes.  So long as it only clarifies

11  what's in the original report.  I am not granting any

12  substantive amendments of the expert report.  For example,

13  if plaintiff wants to bring up a new issue that is not

14  already addressed in this report, I'm not granting

15  plaintiff leave to do that.  Time has passed.  You've had

16  enough chances.  But if there's a particular statement in

17  here that needs to be clarified because it's ambiguous,

18  plaintiff is granted leave to do that.

19          MS. SHELTON:  And Your Honor will be determining

20  the motion for spoliation?

21          THE COURT:  Yes.

22          MS. SHELTON:  And after the motion for

23  spoliation is determined will there be any further rulings

24  regarding what's left in this expert report?  Or is that

25  an application that I would make to Judge Irenas?

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  That might be an application -- I

2  don't know.  We'll have to cross that bridge when we come

3  to it, Ms. Shelton.  My instinct tells me that ultimately

4  that's going to be Judge Irenas's call, ultimately.

5          MS. SHELTON:  I just wanted to be clear because

6  I think we may be back again as to what happens with this

7  expert's report --

8          THE COURT:  Right.

9          MS. SHELTON:  -- if anything, after the motion

10 for spoliation --

11         THE COURT:  But I envision happening is, and I

12 anticipated this, and correct me if I'm wrong, Mr.

13 Friedman, because I anticipated that when dispositive

14 motions are filed you would raise a spoliation issue.

15 That's why I want to get the spoliation issue resolved and

16 decided before the dispositive motions are filed one way

17 or the other.

18         MS. SHELTON:  That would raise my next point,

19 Your Honor.  Will there be an extension to the summary

20 judgment briefing schedule?

21         THE COURT:  Yes.  Yes.  The summary judgment

22 briefs will not be due until after the spoliation motion

23 is decided.

24         MS. SHELTON:  And you'll issue a date after

25 that?

**J&J COURT TRANSCRIBERS, INC.**

1                   THE COURT:  Absolutely.

2                   MS. SHELTON:  Okay.

3                   THE COURT:  Because I'm concerned that if you

4    file your -- if you file your summary judgment motions now

5    and plaintiff argues for a spoliation inference, and I

6    haven't yet decided the spoliation motion, well, what's

7    the good of the motion?  That's why I want to do that

8    issue first.

9                   MS. SHELTON:  I understand, Your Honor.  I

10   believe there was another issue to be addressed which was

11   the mirror imaging of plaintiff -- plaintiff's counsel has

12   represented that this expert's report speaks to mirror

13   imaging and metadata and that he needs to explain these

14   things to the Court, and I believe -- we've talked.  There

15   might be some resolution of this mirror imaging issue.  I

16   don't want to have to come back here again about this, so

17   I want to try and flesh this out to whatever is out there.

18                  Plaintiff's expert report identified

19   specifically a type of software program that would be used

20   to make a mirror image.  As part of his opinion, that

21   mirror image was not produced.  When I contracted with an

22   outside computer forensics firm and said, look, whatever

23   we tried to do before apparently wasn't right, can you

24   please do this?  They created a mirror image, and I asked

25   them to use the software that the plaintiff stated he was

1  familiar with and that he was -- he is holding himself out

2  as an expert, not in IT, in computer forensics in this

3  report, and he's identified specifically software programs

4  that he was familiar with that could and should have been

5  used to create this mirror image, and now that defendant

6  has done exactly that, created the mirror image with this

7  software that he claims as a computer forensics expert to

8  be familiar with, he's now telling me that he can't access

9  it, and it's going to cost too much money.  I would have

10 thought this was software he already had if he was

11 familiar with it enough to hold himself out as an expert

12 in this matter.  And now he's telling me no, no, no, we

13 don't want it in this format, we want it through something

14 else.  I don't know what that is, but I'm afraid to leave

15 this courtroom and find out later that it's something that

16 -- who knows what will happen.  Sort of -- I don't know,

17 but I -- I'd like to flesh this out if we can.

18          THE COURT:  This is what Mr. Friedman

19 represented would cost $75?

20          MS. SHELTON:  Yes, Your Honor.

21          THE COURT:  Can you help us, Mr. Friedman?

22          MR. FRIEDMAN:  Yes.  I know that Ms. Shelton

23 made representations as to the specific software program

24 that Mr. Omogbehin stated should be used.  I am not sure

25 what she is referring to.  I can refer the Court to Page 5

**J&J COURT TRANSCRIBERS, INC.**

32

1   of the report, the last paragraph, in which Mr. Omogbehin

2   states that mirror images can be created using various

3   techniques and software programs.  He certainly didn't

4   direct the Government to use a particular software program

5   that costs $3,600 or $5,300 to purchase, and we're not

6   sure --

7            THE COURT:  Who paid for that?  The Government?

8            MS. SHELTON:  Your Honor, I paid to have the

9   mirror imaging done.

10           THE COURT:  And it cost $3,500?

11           MS. SHELTON:  No.  This is -- Your Honor, my

12  computer forensics expert is going to cost me quite more

13  than that.  But what plaintiff has represented to the

14  Court is that in order for his client to read the data

15  that we've now provided him he needs to purchase software,

16  which frankly, as a computer forensics expert that he's

17  holding himself out to be I would have thought he had.

18           THE COURT:  Well, the plaintiff is going to have

19  to purchase this $75 software.  Why should the defendant

20  pay for it if they've already mirror imaged it?

21           MR. FRIEDMAN:  That is not a problem provided

22  the Government gives him access to the laptop so that he

23  can create his own mirror image.

24           MS. SHELTON:  Your Honor, this was addressed

25  very directly in the motion to compel and the motion for

1  reconsideration.  If we produce a mirror image we were not

2  required to produce the actual laptop.  The Court has

3  already ruled on that and I would object to giving the

4  laptop to plaintiff.  I thought what I was going to hear

5  from plaintiff's counsel is some direction about what my

6  computer forensics guy should have done that would only

7  take $70 to read.  I don't --

8              THE COURT:  Let me ask you this.  I --

9              MS. SHELTON:  I mean, if that's the question,

10 Your Honor --

11             THE COURT:  Ms. Shelton, I think counsel needs

12 to discuss this issue.  If it's -- and I don't understand

13 the issue yet.  If it's a simple matter, Ms. Shelton, of

14 your custodian making available this laptop in a

15 conference room while you're present and your custodian is

16 present, plaintiff comes to your conference room, plugs

17 something in while you're watching everything that's done

18 with no danger or risk that the data is going to be

19 irretrievably lost, why can't we do that?

20             MS. SHELTON:  Because, Your Honor, I'm not an IT

21 expert and I would not be competent to say whether or not

22 he had handled the matter properly.  I am certainly

23 willing to allow a third party to do this, but not to let

24 the plaintiff himself.  It frankly wouldn't be

25 appropriate.  Second of all, I'm not in a position to say

**J&J COURT TRANSCRIBERS, INC.**

34

1  whether or not he's doing the mirror imaging without

2  writing over or doing something else to it, which is why I

3  contracted a third party to do it.  Now, if there is a way

4  for the third party to do what plaintiff is proposing to

5  do, tell me what you want him to do and I will ask if

6  that's something he can do now that I've spent the expense

7  of the other production --

8          THE COURT:  Can that be done?

9          MR. FRIEDMAN:  There is a way, then --

10         MS. SHELTON:  What is the way?

11         MR. FRIEDMAN:  To have any number --

12         THE COURT:  Let's hear from -- do you mind if we

13  hear from your client, because he's the quote, unquote,

14  expert?

15         MR. FRIEDMAN:  Yes.

16         THE COURT:  What has to be done?

17         MR. OMOGBEHIN:  There is a very simple software

18  that can be used.  It's called Norton Ghost.

19         THE COURT:  Do you load it onto the laptop?

20         MR. OMOGBEHIN:  You load it onto your laptop.

21         THE COURT:  And then what happens?

22         MR. OMOGBEHIN:  You can attach an external

23  storage just like the one that they gave to us.  You can

24  attach it to that laptop and then you just tell that

25  software to copy the e-mails of that laptop onto that

**J&J COURT TRANSCRIBERS, INC.**

1 external storage.  This process takes about 45 minutes.

2 It doesn't take more than that.  That is it, Your Honor.

3          THE COURT:  Can Ms. Shelton's expert do this?

4          MR. OMOGBEHIN:  Absolutely.  Yes.

5          THE COURT:  Can you give her the software that

6 you'd need?

7          MR. OMOGBEHIN:  Absolutely.

8          THE COURT:  Can you do that?  I'm ordering you

9 to do that, Ms. Shelton, ask your expert to spend 45

10 minutes to copy this.

11          MS. SHELTON:  Can you tell me the name of the

12 software again?

13          MR. OMOGBEHIN:  Norton Ghost.

14          THE COURT:  Is there a version?

15          MR. OMOGBEHIN:  The latest version, six point  -

16 - or 5.0.

17          THE COURT:  Can I ask, if it's such a simple

18 process why didn't you raise this before?

19          MR. OMOGBEHIN:  I did, Your Honor, but they

20 didn't want to produce it.  They said you'll have to use

21 your own expert person.  So, I just let it go.  And I told

22 them it was a very simple process.  It takes -- it's about

23 $70 software, and it's about -- it takes about 45 minutes

24 of copying, ghosting of the entire e-mail.

25          THE COURT:  And you put it on one of these

**J&J COURT TRANSCRIBERS, INC.**

1  portable discs?

2          MR. OMOGBEHIN:  Yes, you can, Your Honor.

3          MS. SHELTON:  Your Honor, I'm going to call my

4  expert when I get out of here and ask him if he's got

5  Norton Ghost.  If they've got Norton Ghost I will ask him

6  to make another image.

7          THE COURT:  Thank you, Ms. Shelton.  If there's

8  any problem let the Court know and we'll address this.  It

9  seems like there should be a simple way to address this.

10         MS. SHELTON:  And, Your Honor, just assuming

11 that this is resolved and that a mirror image to

12 plaintiff's satisfaction is produced by the defendant,

13 then what happens to the information in the expert's

14 report regarding the fact that we have not mirror imaged

15 or that we haven't provided a mirror image?

16         THE COURT:  I assume it becomes moot.

17         MS. SHELTON:  Okay.  And I believe this is

18 something that I would address -- I mean, it begs the

19 question, then, there would need to be an amendment or a

20 striking of this from the report prior to its submission

21 to anybody that's going to consider it?

22         THE COURT:  I would assume so --

23         MS. SHELTON:  Okay.

24         THE COURT:  -- if that's the case.  This is

25 where we are, counsel.  Plaintiff is filing a spoliation

**J&J COURT TRANSCRIBERS, INC.**

1  motion by June 15th.  It seems to the Court, Ms. Shelton,

2  that this is a complex issue that is going to take you

3  some time to respond to, that's what I anticipate, and

4  you'll need to consult with your expert.  Do you think it

5  will take you more than 30 days, or would you prefer 45

6  days?

7          MS. SHELTON:  Your Honor, only due to other

8  depositions, commitments I have in June, 45 would be

9  preferable.

10         THE COURT:  The Court believes there's good

11 cause to do that given the complexity of the issue, so

12 plaintiff's -- defendant's response will be due July 31st,

13 and the Court -- you don't have to file a separate motion

14 on this, Mr. Friedman, the Court is granting you leave to

15 file a reply brief to defendant's opposition, and that

16 will be due by August 17th.

17         I regret that this is dragging out as long as it

18 is, but it's an important issue.  And we'll schedule oral

19 argument in early September.  After that issue is decided

20 I will give the parties a deadline to file dispositive

21 motions.

22         Let's sum up the Court's rulings.  The motion

23 that the expert -- the request that the expert report be

24 stricken because it was untimely is denied.  Plaintiff

25 shall file the spoliation motion by June 15th.  The

**J&J COURT TRANSCRIBERS, INC.**

1   response is due by July 31st.  Plaintiff's reply is due by

2   August 17th.  The Court will schedule oral argument.

3   Plaintiff, in a request to amend -- substantively amend or

4   supplement the expert report is denied.  The case has been

5   going on for quite some time and there's no good cause to

6   raise an issue that has not already been raised.  However,

7   plaintiff is granted leave to clarify any of the existing

8   opinions expressed in the expert report that has already

9   been served.

10          If defendant objects that a quote, unquote

11  clarification is not in fact that but is instead a

12  substantive issue, raise that objection, Ms. Shelton, and

13  the Court will deal with it.  If the Court determines that

14  it's a substantive amendment it will be stricken for lack

15  of good cause.  If it's simply a clarification of a point

16  that was already made, the application to strike it will

17  be denied.

18          Mr. Friedman, do you have any other issues you'd

19  like to address with the Court?

20          MR. FRIEDMAN:  Just one brief issue.  At the

21  time fact discovery had ended previously, the agency

22  supplied supplement -- the initial disclosures.  And they

23  identified documents that Mr. Omogbehin in his litigation

24  hold letter had requested at the time of his termination,

25  that being all of the documents and electronic data that

**J&J COURT TRANSCRIBERS, INC.**

1  were in his office.  The agency has represented that those

2  are in safe keeping.  They are boxed up.  And we do have

3  arrangements now for Mr. Omogbehin to go through all of

4  those materials.  It will probably be next week, and I

5  just --

6           THE COURT:  Are these personal papers or work

7  related papers?

8           MR. FRIEDMAN:  Work related papers.

9           THE COURT:  Okay.  That's fine.  That's

10 perfectly reasonable.  If the defendant has satisfied its

11 duty under Rule 26(e) to supplement you clearly have a

12 right to review those documents.  There's no question

13 about that, Mr. Friedman.

14          MR. FRIEDMAN:  I just wanted to bring that to

15 the Court's attention.

16          THE COURT:  Thank you.  I think counsel is able

17 to work through that.  Okay.  It appears that there's no

18 other issues from the plaintiff.  Ms. Shelton, any issues

19 from the defendant?

20          MS. SHELTON:  Not that I can think of, Your

21 Honor.

22          THE COURT:  Thank you, counsel, for your

23 argument.  I think we now have a game plan to proceed with

24 this case, and we're adjourned.  I'll enter an appropriate

25 order just confirming these rulings, and we're adjourned.

**J&J COURT TRANSCRIBERS, INC.**

40

1                           * * * * *

**C E R T I F I C A T I O N**

I, TAMMY DeRISI, court approved transcriber,

certify that the foregoing is a correct transcript from

the official electronic sound recording of the proceedings

in the above-entitled matter to the best of my ability.


/s/ Tammy DeRisi                    Date: July 20, 2009
TAMMY DeRISI
J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**