# DECLARATION OF KAREN H. SHELTON

I, Karen H. Shelton, hereby declare as follows:

I am the Assistant United States Attorney assigned to represent the Defendant in the matter of <u>Omogbehin v. Cino</u>, Civil Docket Number 06-4581. I am the second counsel for Defendant to appear in this case. As part of my responsibilities, I have access to and I am familiar with the pleadings and filings in this case. Copies of documents relevant to this motion are attached hereto and are described as follows:

1.      Attached hereto as Ex. 1 is a true and correct copy of Plaintiff's letter dated April 15, 2009.

2.      Attached hereto as Ex. 2 are true and correct copies of selected pages from a transcript of the Court's August 7, 2007.

3.      Attached hereto as Ex. 3 are true and correct copies of selected pages from a transcript of the Court's May 21, 2009 hearing.

4.      Attached hereto as Ex. 4 is a true and correct copy of an FAA memorandum dated May 11, 2004, which was produced to Plaintiff on March 31, 2009.

5.      Attached hereto as Ex. 5 are true and correct copies of selected pages from Defendant's Objections and Responses to Interrogatories and Requests for Production of Documents - First Set.

6.     Attached hereto as Ex. 6 are the true and correct copies of the Declarations which were previously filed in May of 2008 with Defendant's Opposition to Plaintiff's Motion to Compel.

7.     Attached hereto as Ex. 7 is a true and correct copy of Defendant's letter dated August 3, 2007 and attachments thereto.

8.     Attached hereto as Ex. 8 is a true and correct copy of Defendant's letter dated April 29, 2008.

9.     Attached hereto as Ex. 9 is a true and correct copy of Defendant's letter of June 23, 2009.

10.     Attached hereto as Ex. 10 are true and correct copies of selected pages from a transcript of the Court's February 21, 2008 hearing.

11.     Attached hereto as Ex. 11 is a true and correct copy of Defendant's letter dated July 27, 2009.

I declare that the foregoing is true and correct to the best of my knowledge and belief, under penalty of perjury pursuant to 28 U.S.C. § 1746. Signed by me on this _27th_ day of July, 2009, at Trenton, NJ.

KAREN H. SHELTON

# Exhibit 1

LAW OFFICES

# DENNIS L. FRIEDMAN

A PROFESSIONAL CORPORATION
SUITE 714
1515 MARKET STREET
PHILADELPHIA, PENNSYLVANIA 19102-1907

DENNIS L. FRIEDMAN

MEMBER OF THE PENNSYLVANIA
NEW JERSEY AND FLORIDA BARS

(215) 567-4600

MONTGOMERY COUNTY OFFICE
445 LEVERING MILL ROAD
BALA CYNWYD, PA  19004
(610) 664-2290

NEW JERSEY OFFICE
411 ROUTE 70 EAST
SUITE 105
CHERRY HILL, NJ 08034
(856) 795-3470

FAX (215) 567-7877

April 15, 2009

**Filed Electronically**
**Copy via Fax - (856) 757-5355**

Honorable Joel Schneider
United States Magistrate Judge
Mitchell H. Cohen U.S. Courthouse
One John F. Gerry Plaza, Room 2060
Fourth and Cooper Streets
Camden, NJ  08101

   Re: *Stephen Omogbehin v. Maria Cino, Acting Secretary,*
                    *Department of Transportation*
        Civil Action No. 06-4581

Dear Judge Schneider:

   Plaintiff's expert report was filed out of time. Although this may sound like "the dog ate my homework" excuse, both plaintiff and I believed that the deadline for filing expert reports fell on a Saturday. We formed this belief well before the deadline date, based upon a misreading of the Court's Order. When Ms. Shelton informed me that the filing was late, I was surprised, reviewed the Court's Order, and realized that I had been mistaken. I request that the expert report submitted by plaintiff not be stricken because it had been filed with the Court one day late.

   The expert report addresses matters that are different from the issue raised by plaintiff in 2007. At that time, plaintiff explored the issue of whether the electronic data supplied on CDs constituted the electronic data contained on the agency's backup tape of April 22, 2004. The matters that plaintiff now addresses involve an analysis of the electronic information presented by the agency. Specifically, as an expert, plaintiff will provide instructional testimony to the jury concerning the concepts of metadata and mirror image backups, which are technical issues which may not be matters of common knowledge to the lay person.

   Plaintiff's issue of spoliation which arose in 2007 concerned whether the agency intentionally removed electronic data from the backup tape before transferring the remainder data onto CDs. There have been additional issues of spoliation that have arisen since

Honorable Joel Schneider
United States Magistrate Judge
Mitchell H. Cohen U.S. Courthouse
April 15, 2009
Page 2


then.  For instance, plaintiff received documents on April 1, 2009
which had been requested throughout the discovery process in both
the administrative proceedings and the judicial proceedings
beginning in 2005.  Some of the documents presented were critical
to the issues underlying the alleged discriminatory termination and
now appear almost five years post-termination.  Additionally, the
defendant has acknowledged that certain other documentation which
had previously been requested, is no longer in existence.
Plaintiff's intention to file a spoliation motion relates to the
documentation that had been produced at the 11th hour and the
documents that the agency acknowledges is no longer in existence.
This spoliation issue is different from the spoliation issue that
plaintiff initially believed was viable in 2007, which related to
solely to the issue of whether the defendant faithfully and
completely transferred all electronic data from the backup tape of
April 22, 2004 onto CDs.

     Plaintiff requests that he be permitted to testify at trial as
an IT expert for the purposes described herein.

                         Sincerely yours,


                         Dennis L. Friedman

DLF/med
cc:  Karen H. Shelton, Assistant U.S. Attorney
     Mr. Stephen Omogbehin

# Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEPHEN OMOGBEHIN,                .    Case No.   06-4581 (JEI)
                                  .
            Plaintiff,            .    1 John F. Gerry Plaza
                                  .    4th & Cooper Streets
            v.                    .    Camden, New Jersey 08101
                                  .
MARIA CINO, ACTING               .
SECRETARY, DEPARTMENT OF .
TRANSPORTATION,                   .
                                  .
            Defendant.            .
                                  .    August 7, 2007
. . . . . . . . . . . .          ..    11:27 a.m.


                    TRANSCRIPT OF HEARING
            BEFORE HONORABLE JOEL SCHNEIDER
            UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:       Law Offices of Dennis L. Friedman
                         By:  DENNIS L. FRIEDMAN, ESQ.
                         Suite 1000
                         Philadelphia, PA  19102-1921


For the Defendant:       Office of the U.S. Attorney
                         By:  JAFER AFTAB, AUSA
                         970 Broad Street, Suite 700
                         Newark, NJ  07102


Audio Operator:          Beth Bagnell


Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

                    _____

                J&J COURT TRANSCRIBERS, INC.
                    268 Evergreen Avenue
                Hamilton, New Jersey 08619
                E-mail:  jjcourt@optonline.net

        (609)586-2311      Fax No.  (609) 587-3599

1  Mr. Aftab, you're going to have to supplement that answer with

2  the names and the names of the documents.   You have to answer

3  the question.

4              MR. AFTAB:   You're referring to Interrogatory Number

5  6, Judge?

6              THE COURT:   Correct.   Okay?

7              MR. AFTAB:   Okay.   Let me -- I wrote down

8  individuals, because that was the last thing you said prior to

9  that interlude -- the individuals and what else, Judge?

10             THE COURT:   Well, just look at Plaintiff's motion,

11 which identifies the deficiencies.

12             MR. AFTAB:   Fair enough.

13             THE COURT:   The defendant has not identified official

14 FAA documents, etcetera, etcetera.

15             MR. AFTAB:   Okay.

16             THE COURT:   If there are none, say none.

17             MR. AFTAB:   We did -- okay, fair enough.   I

18 understand.

19             THE COURT:   Document Request 1 through 5.   The

20 objection here is that the defendant has withheld e-mails from

21 9/7/03 through April 27, '04, and produced limited e-mails for

22 April '04 up to April 22nd, '04.   Mr. Aftab, what's your

23 position?

24             MR. AFTAB:   This was discussed at our hearing last

25 time, and since that time what we have done is -- I should say

**J&J COURT TRANSCRIBERS, INC.**

1  -- let me start out this way.  At the hearing the reason why we

2  did not produce it in the digital form that the plaintiff was

3  requesting is because it was available in paper form, and that

4  there would be a significant burden in restoring it, this

5  archive material, into the digital form that plaintiff was

6  requesting.  So, we went back to plaintiff and said this is how

7  we can produce it.  Plaintiff said that's not what I'm looking

8  for.  I'm looking for it in digital format.  After going over

9  the issue again, and actually, as I said at the hearing, we

10 decided, okay, you know what, we're going to do it anyway, and

11 so we did.  And we undertook a significant effort and produced

12 all of the e-mail relating to other employees in the format --

13 the digital format requested by plaintiff, and we had produced

14 that.  And that goes from the period of time that plaintiff has

15 requested.  So, for Requests 1 through 4, all of that material

16 has been provided on C.D.s.

17         Now, with regard to Request 5, as it relates to

18 defendant's archives e-mail, over two years ago we had already

19 produced defendant's archives e-mail in the paper format that

20 we had discussed -- that I had just discussed right now.  It

21 was in a paper spool format, so it was just a printout of all

22 of the e-mails on paper.  And that's probably what has led to

23 plaintiff to request the other employees' e-mails in the

24 digital format.  That was an onerous -- that was onerous to

25 plaintiff, as well as defendant.  It's our position, Judge,

**J&J COURT TRANSCRIBERS, INC.**

1  that he's had those paper -- he's had that paper now for two

2  years.  He already reviewed it in preparation of the

3  administrative hearing.  And that should be sufficient.  But at

4  the same time, plaintiff stored his e-mail on a network drive,

5  unlike all the other employees.  So, unfortunately, that

6  archived drive had been erased, which is a separate issue,

7  which means we can't even produce it anyway.  But we had

8  already produced it in the paper format, again, two years ago.

9  So, we cannot respond to that request for the archived e-mail

10  in digital format.  But again, Judge, he had it, and he now has

11  all the other four employees, which are, I think, requests 1

12  through 4, or 2 through 5.  I forget exactly what it is in

13  terms of the numbers.

14        THE COURT:  All right.  Mr. Friedman, what's your

15  response?

16        MR. FRIEDMAN:  Judge, my response, I am looking for

17  Mr. Omogbehin's analysis of the agency response that we

18  received a short -- a short while ago.  I can't put my hands on

19  it.  May I preface this by saying at the hearing of July 7th,

20  2007, and I can refer to the specific language, you indicated

21  that once the motions to compel were filed and the agency

22  response was filed, you would determine whether to have an in

23  person conference on the discovery motion which would be

24  scheduled in July or August.  And quite frankly, I don't have

25  my papers in front of me, but I will say that Mr. Aftab is

1 making representations that we contend are totally, completely,

2 and utterly inaccurate, and misleading, and that he is now

3 representing to the Court factual information that is simply

4 not true.  At the hearing of July 7th I presented you with a

5 document which he looked at and returned to me.  Unfortunately

6 we didn't have it as part of the record because I thought that

7 the meeting was an informal meeting to resolve a discovery

8 dispute, but it was a letter that Omogbehin had given to the

9 agency on the day after he was terminated in which he

10 specifically identified electronic files that he wanted the

11 agency to preserve because he felt that the termination was

12 improper.  We're learning now, or at least I'm learning now for

13 the first time from Mr. Aftab, because I don't believe that it

14 was ever in any written documentation, that some electronic

15 information in Mr. Omogbehin's file was somehow inadvertently

16 destroyed.  I have no idea whether that's true or not, only Mr.

17 Aftab's representation.  I don't know where he got the

18 representation from, and under what circumstances things were

19 inadvertently destroyed.

20          With regard to the agency's production of documents

21 two years ago, we deny that Mr. Omogbehin got the information

22 that was contained in his e-mail files, the full and complete

23 information.  If the agency wishes to present a declaration

24 saying that all that the information that Mr. Omogbehin

25 requested was copied and put in a box, which is a Xerox type

1 box which contains, like, 5,000 documents, and that that

2 represented the full and complete files of -- e-mail files of

3 Mr. Omogbehin, then Mr Omogbehin will present testimony that

4 the information was incomplete, and he will provide specific

5 examples.  But we have no declarations of record.  The only

6 thing that we have is Mr. Aftab's representations that Mr.

7 Omogbehin got a box of approximately 5,000 pages that were

8 uncatalogued, that were unlabeled, that were unmarked, just

9 papers, and it was represented that these pages contain what

10 was contained in his e-mail files.  We don't believe that that

11 is true, and we would ask the agency to produce those documents

12 and show the Court what it presented to Mr. Omogbehin.  Mr.

13 Omogbehin asked for electronic records relating to a number of

14 individuals.  He has not received that information.

15         THE COURT:  Okay.

16         MR. FRIEDMAN:  If --

17         THE COURT:  Mr. Friedman, I heard enough.  Here's my

18 ruling on this issue.

19         MR. AFTAB:  Judge, if I could just put in one thing?

20         THE COURT:  I'm ready to rule, Mr. Aftab.  Counsel

21 for the defendant has represented that with regard to Document

22 Requests 1 to 4, they have provided all the responsive

23 information on C.D.s.  Counsel for the defendant has

24 represented that with regard to Document Request 5, they have

25 provided full and complete responses in hard copy and that the

**J&J COURT TRANSCRIBERS, INC.**

1    e-mails have been deleted.   Based on counsel's representations,

2    I'm denying plaintiff's motion to compel.   However, Mr.

3    Friedman, you have the right to test the accuracy and

4    completeness of these representations.   You have the right, if

5    you wish, to take the deposition of a representative of the

6    defendant by name, or designate somebody pursuant to Rule

7    30(b)(6), to test the accuracy of these representations and

8    answers.   If it turns out, Mr. Friedman, after you take that

9    deposition, and that the defendant's representations to the

10   Court are not accurate and complete, the Court will entertain

11   an appropriate application to require the defendant to pay the

12   cost of that discovery and to require the production of

13   information.   If it turns out that you discover in the future

14   that you should have had information and documents that were

15   not produced to you until you took this deposition, I will make

16   sure, the Court will make sure that you are not prejudiced.

17   The Court will give you additional time to conduct discovery,

18   and under appropriate circumstances the Court will consider an

19   application to switch the costs of that discovery to the

20   defendant.   That's my ruling.

21           MR. FRIEDMAN:   Judge, I really feel as though I have

22   been severely prejudiced.   And I apologize for repeating

23   myself, but I -- I don't even have the papers to gather, and I

24   would really like an opportunity, even if it's a half an h

25   from now, for me to gather the rest of my information, and

1  supplement what I am saying here.  This is a very important

2  matter for Mr. Omogbehin, and we believe that the agency may be

3  engaging in sanctionable conduct, and I would rather not go

4  there.  I would rather get this resolved at this level.  And I

5  would merely ask for a half an hour for us to resume so that I

6  could give a more coherent and complete response.

7           THE COURT:  Mr. Friedman, I appreciate your request,

8  but the Court's ruling is the Court's ruling.  This was

9  scheduled for an 11 o'clock in-person conference.  Through some

10 inadvertent error counsel didn't show up.  As a courtesy to

11 counsel, I'm not required to, I have this phone conference

12 addressing the issue, which the Court is not even compelled to

13 address issues at oral argument.  These are not complicated

14 issues.  The Court's ruling is based on the papers and what I'm

15 hearing during this phone conversation.  If you contest, Mr.

16 Friedman, if you believe the defendant's representations are

17 inaccurate or incomplete, you have the right to take their

18 deposition, to verify whether or not they're telling you is

19 correct.  If it's not correct, I already told you that I will

20 entertain an application for sanctions and/or to switch the

21 costs of the discovery.

22           MR. FRIEDMAN:  Um --

23           THE COURT:  Let's now move to Document Request 9.

24 Okay?

25           MR. FRIEDMAN:  May I --

**J&J COURT TRANSCRIBERS, INC.**

1 written.  They are not, quote, unquote, submitted, or quote,

2 unquote, approved by the FAA Tech Center.

3 THE COURT:  Mr. Aftab, I'm reading the request, and

4 there's absolutely nothing in this request that says, quote,

5 unquote, official document.  That is something --

6 MR. AFTAB:  Approved by the FAA Tech Center.  That's

7 the request.  It says, submitted or approved by the FAA Tech

8 Center.  And there is no document that meets that -- nothing

9 was submitted or approved by the FAA Tech Center.  But,

10 nevertheless, we did produce the ACX-20 Strategic Plan

11 Documents in our last set of responses.

12 MR. FRIEDMAN:  Judge --

13 MR. AFTAB:  So, we have produced those, Your Honor.

14 THE COURT:  All right, Mr. Friedman.

15 MR. FRIEDMAN:  May I make a comment?  There was no --

16 there could not have been compliance with the request for

17 production of documents 1 through 5 because the agency did not

18 cover the period September 7th, '03 to April 27th, '04.

19 Categorically they have not produced the documents spanning

20 that entire time period.

21 THE COURT:  Mr. Friedman, if you believe their

22 representation is inaccurate or incomplete, take their

23 deposition and make an application to the Court for whatever

24 sanctions or relief you deem is appropriate.  If --

25 MR. FRIEDMAN:  Your Honor, my statement on the record

**J&J COURT TRANSCRIBERS, INC.**

18

```
1  --

2          THE COURT:  Excuse me, Mr. Friedman.

3          MR. FRIEDMAN:  -- that the agency did not produce the

4  e-mails for that entire time period.  Their responses did not

5  include all of those dates.

6          THE COURT:  Mr. Aftab has represented that he has

7  made -- his client has made a complete production of the

8  documents and the C.D.s that they have, Mr. Friedman.  If he

9  represents he has nothing else to produce, I can't order him to

10  produce something that he says doesn't exist.  If you believe

11  it's inaccurate or incomplete, take a deposition and make an

12  application for relief.  With regard to Request Number 9, the

13  Court's ruling is the motion is denied for the reason that the

14  defendant has represented that the document that's requested

15  has been produced even though there's no, quote, unquote,

16  official document.  Again, Mr. Friedman, this is the fifth or

17  sixth time I'm saying it, if you're not satisfied with the

18  answer, take a deposition and make an application for

19  appropriate relief if you believe the representation is

20  inaccurate.

21          MR. FRIEDMAN:  Okay.  Your Honor, on the record at

22  the last hearing we had filed a motion for request to serve a

23  third set of interrogatories.  The first two sets of

24  interrogatories included 25 in number.  The additional request

25  to serve a third set consisted of, I believe, 14
```

**J&J COURT TRANSCRIBERS, INC.**

1  and Mr. Aftab agreed to provide us with a copy of the
2  audiotape, and we have not received it as of this point.
3            THE COURT:  What audiotape are you referring to?
4            MR. FRIEDMAN:  This is the voice mail tape.
5            MR. AFTAB:  Mr. Omogbehin had requested the
6  preservation of his lap top and the audiotape for his voice
7  mail, and those requests were honored.  As I stated earlier,
8  with regard to the archived e-mail, Mr. Omogbehin saved his e-
9  mail to a network drive, unlike all the other employees.  So,
10 the lap top was preserved, and from that we've produced all the
11 information that he's requested, and the audiotape still
12 exists, and at the hearing the Judge ordered that if you want
13 the audiotape you would have to pay for that, that the
14 plaintiff would have to pay for that.  That's why we haven't
15 produced it.  But if you want that information, we can produce
16 it.  We just wanted an assurance that you would pay for it.
17           MR. FRIEDMAN:  Mr. Aftab, we want the audiotape, and
18 you had agreed on the record to give us the audiotape.  We're
19 not asking for it to be transcribed.  We're asking for the
20 audiotape that Judge Schneider directed you to give to us, and
21 that you agreed you would give to us.
22           THE COURT:  Mr. Aftab, what are we talking about in
23 terms of these audiotapes?  How long are they?  Where are they
24 located?
25           MR. AFTAB:  They're at the FAA Tech Center, and we

**J&J COURT TRANSCRIBERS, INC.**

1    can get them --

2            THE COURT:  How many are there?  How long are they?

3            MR. AFTAB:  There's one, and it's in an outmoded

4    format, and we got a written estimate from Nortel (phonetic)

5    Networks, which is the only company that can extract this

6    information.

7            THE COURT:  And what is the cost of it?

8            MR. AFTAB:  $6,000.  That was the written estimate.

9            THE COURT:  Can the plaintiff come and listen to it?

10           MR. AFTAB:  Um -- no, because it has to be extracted

11   first, Your Honor, because it's not in a format that can be

12   played.

13           MR. FRIEDMAN:  We merely are asking for the

14   audiotape.  That's all.

15           THE COURT:  Mr. --

16           MR. FRIEDMAN:  We aren't asking for the tape to be

17   extracted.

18           THE COURT:  Well, Mr. Aftab, help me here.  Are you

19   saying that you can't produce the audiotape without extracting

20   it?

21           MR. AFTAB:  No, I think we can produce the tape as it

22   is, but I'm going to have to consult with my agency counsel to

23   see where they want to go with this one, because it was my

24   understanding that plaintiff was going to be ordered to pay for

25   it.

THE COURT:  But the plaintiff is saying they just want the tape.  Can you produce that?

MR. AFTAB:  I'll have to check with my agency, Your Honor.

MR. FRIEDMAN:  I --

MR. AFTAB:  Right now I don't see any reason why not.

MR. FRIEDMAN:  I was caught off guard, again, by not being aware that there was going to be a conference on the actual motion, but I did review the hearing transcript. Magistrate Judge Schneider, you asked agency counsel whether agency counsel would produce the tape.  It was on the record. He agreed to it.

THE COURT:  Do you have the entire transcript, Mr. Friedman?

MR. FRIEDMAN:  And I can read you the excerpt, because I -- I know that you and/or he had agreed, said, well, we -- we have dispensed with that one issue.

THE COURT:  All right.  I'm going to look at the transcript again, Mr. Friedman.  I'm directing Mr. Aftab to get me a letter by August 31st on what the government's position is with regard to producing a copy of this audiotape.

MR. AFTAB:  Okay.

THE COURT:  If the government's position is it's too burdensome or expensive, put it in the letter.

MR. AFTAB:  Will do.

**J&J COURT TRANSCRIBERS, INC.**

plaintiff makes a good point.  There hasn't been a sufficient

showing at this point that the information is relevant to

issues in the case.  If, in the future, defendant can make a

further proffer on why it's relevant, I will consider it, but

at the moment the cross motion is denied without prejudice.  In

addition, the Court believes it's compelling that most, if not

7  all of the information that the defendant has requested

8  probably is already in its possession because of some

9  background investigation that was done for the plaintiff to

10 have his position.  I'll put all this in an order.  Mr.

11 Friedman, where do you intend to go next with regard to

12 discovery in this case?

13          MR. FRIEDMAN:  Well, we are awaiting the responses to

14 the third set of discovery.  I believe that I intend to notice

15 Mr. Aftab that we may be filing a motion for sanctions.  We may

16 be filing a motion relating to spoliation of evidence.  We are

17 absolutely going to conduct depositions.  And we will probably

18 file a Rule 34(b) motion, the motion where an expert will go on

19 the premises of the agency and actually conduct an electronic

20 discovery of the -- of the electronic information that the

21 agency has maintained.

22          THE COURT:  Mr. Friedman, before you do that --

23          MR. FRIEDMAN:  Um-hmm?

24          THE COURT:  -- I want you to take a deposition of a

25 representative of the defendant on these electronic discovery

**J&J COURT TRANSCRIBERS, INC.**

issues.

MR. FRIEDMAN:  Okay.

THE COURT:  Because there has to be a record about what they did or didn't do, and what the circumstances are regarding their search.  It will not be helpful if you file your motion unless you have already spoken with and deposed an appropriate representative of the defendant who has knowledge about these issues.

MR. FRIEDMAN:  And to comment on that, the agency's representation set forth in the responses to the discovery were made by Shelley Yak, who was the individual that Mr. Omogbehin identified as the alleged discriminating official.  She was the individual who had terminated Mr. Omogbehin, and Mr. Omogbehin alleged he was terminated for discriminatory reasons.  She, we contend, is not an IP expert, and we contend that the responses that she verified were correct were made by her.  And we will — we believe that she did not exercise good faith in attempting to secure the information that had been requested.

THE COURT:  Mr. Friedman, you have the right to pursue that line of inquiry, so what you have to do is, my order will state that you have to take your depositions of the defendant regarding these electronic discovery issues by October 15th.  If that means you're going to take Ms. Yak, take it, if you're going to take a 30(b)(6) witness, take it by October 15th.  And then I'll set a deadline of November 15th

**J&J COURT TRANSCRIBERS, INC.**

for filing any type of motion to compel or for sanctions, or what have you.  But in the meantime we're still going to pursue discovery in this case.  I'm going to set a discovery deadline of December or January.  We're not going to let this case languish while you pursue these electronic discovery issues, Mr. Friedman.  There's still plenty to do in this case.

MR. FRIEDMAN:  I'm (indiscernible) it, and one of the spoliation issues that we have, if you noticed in the motion to compel, Mr. Omogbehin -- or actually attached to the motion to compel was a handwritten document by Mr. Omogbehin requesting that the agency preserve all this evidence, including the electronic evidence, and we are certainly going to explore the issue of the inadvertent destruction or loss of the electronic versions of Mr. Omogbehin's e-mails.  And the reason why I say that is electronic discovery gives individuals the wherewithal to be able to do searches by fields, by key words, by dates, by names.  If someone has a pile of 10,000 pages and has to categorize it, and one page could be categorized in terms of 15, 20, 30 different issues, then that one piece of paper would have to be put in a file folder with the issue labeled on that, whereas if there were just one electronic file, someone wishing to search a particular issue could put in a key word, or a phrase, or a particular limiting field, and be able to extract almost instantaneously the information that would be sought in order to develop the facts relating to the issue.  And that's

electronic discovery in a case like this is so critical.

THE COURT:  Mr. Friedman, you have the right to issue that inquiry.  My only response is I will decide the motion the facts.  There is a time in a case where the cost and burden of retrieving evidence of this sort outweighs any marginal relevance it may have in the case.  And the Court will certainly keep that in mind when it rules on the motion.  The defendant has already represented they produced hard copies of e-mails, C.D.s, and there comes a time where the cost of issuing discovery outweighs its relevance, so I'm going to keep that in mind.  The rules specifically provide that as a factor I can consider.

MR. FRIEDMAN:  Okay.

THE COURT:  All right?  I'm going to issue my order of ruling on the motion and cross motion.  October 15 to complete discovery on these electronic discovery issues.  File your motion by November 15.  I'm going to set a fact discovery deadline the end of December or January, so don't let these discovery issues detract you from the merits discovery which is not going to languish in this case.  Anything else, counsel?

MR. FRIEDMAN:  Yes.  Under the local rules, I believe, the agency is -- I'm sorry, the defendant is required to identify the IT expert who would have knowledge of the agency's practices.  So, I would ask that the agency identify

## C E R T I F I C A T I O N

I, TAMMY DeRISI, court approved transcriber, certify
the foregoing is a correct transcript from the official
electronic sound recording of the proceedings in the above-
titled matter.

_DeRisi_                        Date:  August 14, 2007

DeRISI

COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEPHEN OMOGBEHIN,          .      Case No.   06-4581  (JEI)
                            .
                            .
           v.               .      1 John F. Gerry Plaza
                            .      4th & Cooper Streets
                            .      Camden, NJ 08101
MARI CINO, Acting           .
Secretary, Department       .
of Transportation,          .
                            .
           Defendant.       .
                            .      May 21, 2009
                            .      11:15 a.m.
. . . . . . . . . . . ..

                   TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE HONORABLE JOEL SCHNEIDER
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        DENNIS L. FRIEDMAN, ESQ.
                          1515 Market Street
                          Suite 714
                          Philadelphia, PA  19102

For the Defendant:        Office of the U.S. Attorney
                          By:  KAREN H. SHELTON, ESQ.
                          402 East State Street #430
                          Trenton, NJ  08608

Audio Operator:           Sarah Kilborn

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

                  J&J COURT TRANSCRIBERS, INC.
                      268 Evergreen Avenue
                   Hamilton, New Jersey 08619
                   E-mail:  jjcourt@optonline.net

        (609)586-2311      Fax No. (609) 587-3599

6

1 IT expert, as an expert for trial purposes.  He would be

2 testifying to matters which may not be in within the

3 purview --

4          THE COURT:  Okay.  Let's get over that.  I'm

5 more worried about the substance of the testimony.  What

6 does he propose to say?

7          MR. FRIEDMAN:  With regard to the document he

8 will show, for instance, that the archival evidence shows

9 that his files were not produced, although there were

10 files produced of other individuals in the same archival

11 area.

12          THE COURT:  But -- okay.  That's the first

13 point.  Okay.  Let's discuss that.  Why is that a trial

14 issue and not a discovery issue?

15          MR. FRIEDMAN:  It's a trial issue because the

16 jury would then have knowledge of steps that were taken by

17 the defendant to withhold or possibly destroy evidence

18 which was important in the defense of the --

19          THE COURT:  But isn't that a spoliation issue?

20          MR. FRIEDMAN:  It is a spoliation issue, and it

21 is also, in my opinion, an issue that the jury could

22 consider.  Where is the evidence that was there at the

23 time that was material to the issues in the case that was

24 asked for at the time of termination and is no longer

25 there?  And I -- my understanding is that that is an issue

**J&J COURT TRANSCRIBERS, INC.**

7

1  that the jury could consider.

2          THE COURT:  Are you asking for a negative

3  inference?

4          MR. FRIEDMAN:  Yes.

5          THE COURT:  Isn't that a spoliation issue?

6          MR. FRIEDMAN:  That is also a spoliation issue.

7  Correct.  But the jury, on its own, could draw negative

8  inferences even without the Judge's ruling on that issue.

9  That is my understanding.  But there is one matter that is

10  the foundation for this argument, and the matter is that

11  there was an order issued requiring plaintiff to file a

12  spoliation motion as of a particular date.  And I'm not

13  quite sure what that order was, and when it was issued.

14          THE COURT:  We're not there yet.

15          MR. FRIEDMAN:  Okay.

16          THE COURT:  I want to start with the substance

17  of this report and its purpose before we get to the

18  timeliness and lateness issue.  The most important issue

19  to the Court now are the substantive issues.  Why -- and I

20  still don't have my arms around it, Mr. Friedman.  This

21  issue comes up frequently.  The plaintiff says documents

22  exist that should have been produced in discovery that

23  weren't produced, so frequently spoliation motions are

24  filed.  I rule on them.  Then we get to trial and you want

25  to argue to the jury that there should be documents

**J&J COURT TRANSCRIBERS, INC.**

going to order that you file a spoliation motion and I'm
going to decide that issue.  And you can do with that
ruling what you want.  If you want a negative inference
because of the destruction of discovery, that's a
spoliation motion.  That should be filed.  I know there
was -- there may or may not have been a prior deadline.
If you want that negative inference I'm going to give you
leave to file that motion.  I'm going to decide that
issue.  Is that what you want at trial, a negative
inference because of -- do you want the Judge to instruct
the jury on this negative inference because of the
destruction of relevant evidence?

          MR. FRIEDMAN:  Yes, of course, as an advocate,
any advocate in the position that I'm in would.

          THE COURT:  Then I'm going to order you to file
-- we'll talk about timing, but I'm going to order you to
file a spoliation motion and I'm going to decide the
issue.  And then what you do with that issue is up to you.
If you appeal it, and how Judge -- if it's not appealed
how Judge Irena's uses it at trial is up to him.

          MR. FRIEDMAN:  Your Honor, I understand, and you
keep -- you're making me kind of queasy when you said that
I can appeal it, the inference being the agency can feel
comfortable in your ruling but I may want to appeal.

          THE COURT:  Of course not.

40

1

* * * * *

### C E R T I F I C A T I O N

I, TAMMY DeRISI, court approved transcriber,

certify that the foregoing is a correct transcript from

the official electronic sound recording of the proceedings

in the above-entitled matter to the best of my ability.


Date: July 20, 2009

TAMMY DeRISI
J&J COURT TRANSCRIBERS, INC.

# Exhibit 4

Inventory Steve Omogbehin's Office
May 11, 2004

**Re: Steve Omogbehin**

On May 11, 2004 @ 7:30 AM, I along with Gary Albert entered the former office of Stephen Omogbehin in the area of J-21, Second Floor, Building 300. The door was locked; Mr. Albert has possession of the key.

Attached is a list of hard files that were inventoried and listed by name. Two boxes were filled, taped shut and we initialed over the tape to prevent tampering. The boxes were secured in the file cabinet of Mr. Omogbehin's former office until 10:30 A.M. when Walt Vernon assisted me in transporting and securing them in the Emergency Operations Facility, Building 305.

Omogbehin's former office being secured by Gary Albert, Carl Henry was assigned to meet with Gary Albert to download files from two computers. The computers will be secured in Mr. Henry's office.

Al Lisicki

D000018

Inventory  Steve Omogbehin's Office
May 11, 2004

**Box #1**

Position description of Contractors
Performance Management plans for staff '04
Briefing material from FAA
Performance Management Plans '03
Telcon issues
Steve's performance plan
SOW infra structure improvement
Security initiative
Test Bed documents
 Mr. Omogbehin's Training documents
Network upgrades
FY04 Goals
Emergency Contact Information
Assigned Responsibilities for staff
Price quotes for equipment
Responsibilities for security team
Reference guides – notes –PMS
Dell Server quote – loose
AVA folder
Disaster recovery plan
NCC improvement plan w/3 CD's
Training and travel papers
ADP meeting minutes
Work documents – communications FAA
SOW Infrastructure Improvement Project
9 diskettes
Old notes from reporting issues
Reorganization Information Telcon Team
Quote – Westwood computer Corp.
Meeting Notes CCB 4/22
Project folder – Security Initiative
Status Report Infrastructure Team
Equipment list for lap-tops
Misc. file – network drawings – Flow chart – CCB
Telephone Operator Business Case
CCB notes 3/10/04
Test Bed user guide
Administrative support duties
Training Material – Managing Business of ATO
Training Material - Delphi

D000019

Inventory  Steve Omogbehin's Office
May 11, 2004

**Re:  Steve Omogbehin**
**Box 1 (continued)**

Job Work Responsibilities
Travel Orders for Training –Federal Appropriations Law
Telecon resumes Donna Kilm
Directory service notes-research-no date
Environmental Network readers –NCC-Feb.19, 2004
Employee Activity Reports –Feb. 20
Intercom Folder:
      Long distance Toll –Feb 04 –International calls
      News Press of AC obituary noted

Little Flyers information
1 pg  (3 of 4) Performance Mgt. Plan
ADP Team List
Page 16 of AVA Report – telecommunications
Project Assignments Team  (no date)
Blue folder – note inside ref. Hamilton Greene)
Action item Folder – April 23, 2004  COTR Training
Misc. notes – follow up- Directing Services Evaluation
Project -2003-139 cabling for new modular building
Network admin project folder
Infrastructure project folder
Unmarked CD-RW
Business Cards – John McDonald "Blue C"
             Michael Cohen Comm Alternatives

Inventory  Steve Omogbehin's Office
May 11, 2004

**Re:  Steve Omogbehin**
**Box #2**

Notebooks from Shelf:

(1) Prism
(5) Appropriations Training Manuals
ICMM training Manual
Acquisition Mgt. Training
Leadership Development Training Manual
Supervisory Skills Training Manual
Travel Book w/ receipts
Disability Information
Occupational Safety & Health Order
CCB Minutes
"Memos"  Telecommuting
Disaster recovery Plan
ARA Performance Training Manual
FAA Manual

Network Diagram Drawings

D000021

Inventory  Steve Omogbehin's Office
May 11, 2004

**Re:  Steve Omogbehin**
**Items Hanging in Office**

Background info ADP Meetings
Listing of OTA Managers
Action for COTR Managers
Justification request for new vehicle for dept.

Sticky notes:
Omo Iya
Internet access issue
Scott –Trip schedule
Diane Newman phone #

Personal calendar 2004 –Commonwealth Communication

D000022

# Exhibit 5

CHRISTOPHER J. CHRISTIE
United States Attorney
JAFER AFTAB
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. 973.645.2892
Fax. 973.297.2010
Jafer.Aftab@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN OMOGBEHIN, | HON. JOSEPH E. IRENAS, U.S.D.J. |
| *Plaintiff,* | *Civil Action No.* 06-4581 |
| v. | DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES |
| MARIA CINO, ACTING SECRETARY, U.S. DEP'T OF TRANSP., | |
| *Defendant.* | |

TO:   Dennis L. Friedman, Esq.
      1515 Market Street, Suite 714
      Philadelphia, PA 19102-1981

PURSUANT TO FEDERAL RULES 26, 33 AND 34 OF CIVIL PROCEDURE,

DEFENDANT, BY ITS ATTORNEY, CHRISTOPHER J. CHRISTIE, UNITED STATES

ATTORNEY FOR THE DISTRICT OF NEW JERSEY, BY JAFER AFTAB, ASSISTANT

UNITED STATES ATTORNEY, HEREBY SETS FORTH ITS OBJECTIONS AND

RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AS FOLLOWS:

## RESERVATION OF RIGHTS

1. Defendant expressly reserves the right to supplement, clarify, revise, or correct any answer and objection set forth herein at any time.

2. Defendant expressly reserves and maintains any objection it may have as to the relevancy, competency, materiality, privilege, or propriety of the discovery sought in plaintiff's demands and to the admissibility or use of information or documents supplied by defendant in its responses herein as evidence for any purpose in this action including the trial and any other action.

3. In the event defendant produced any information or document that could have been withheld based upon any one or more objections set forth in the General Objections portion of defendant's responses below, the production of any such information or documents shall not constitute waiver of any such objection and shall not affect defendant's right to withhold production any other existing information or documents governed by those objections.

4. The enumeration of specific objections in defendant's response shall not be deemed waiver of other applicable objections.

5. In responding to or producing documents responsive to plaintiff's demands, defendant does not admit or imply that it considers any of plaintiff's demands or defendant's responses hereto to be relevant or material to the subject matter of this action, or to claims or defenses of any party herein, or that any of plaintiff's demands or defendant's responses are reasonably calculated to lead to the discovery of admissible evidence.

GENERAL OBJECTIONS

Defendant objects generally to plaintiff's demands on the following grounds:

1. Defendant objects to plaintiff's demands to the extent they purport to impose burdens beyond the duty to respond as set forth in Federal Rules 26, 33, and 34 of Civil Procedure.

2. Defendant objects to plaintiff's demands to the extent they request material or information prepared in anticipation of litigation or information or documents protected from disclosure by the attorney-client privilege, the work-product doctrine, or the Government's privilege in connection with the deliberative process of executive agencies, the requirement of the Privacy Act, 5 U.S.C. section 552a, or any other applicable privilege, immunity from, or prohibition from disclosure.

3. Defendant objects to plaintiff's demands to the extent that they assume facts that are inaccurate, are argumentative, mischaracterize the position of defendant, are so confusing or vague as not to be susceptible to a reasoned interpretation or response, or otherwise defective in form.

4. Defendant objects to plaintiff's demands to the extent they purport to:

   a) seek information which is not relevant to the claims or defenses in the present action; or

   b) seek information that does not appear reasonably calculated to lead to the discovery of admissible evidence; or

   c) require defendant to draw a conclusion of law; or

   d) require defendant to provide an opinion or contention that related to fact or application of law to fact; or

e) require defendant to answer a contention interrogatory at this state of discovery.

## RESPONSES TO REQUEST FOR PRODUCTION

Request for Production #1:

Content of Electronic mail files put on CD (not paper document) in lotus notes of plaintiff's email files (also known as "names.nsf" files) for the period 9/7/03 to 4/27/04, including all previously deleted or purged electronically stored information and electronic documents – including, but not limited to, the contents of the inbox, directories and sub-directories (such as sent items), calendars, etc. This request includes all electronically stored information and electronic documents which were stored, transmitted or received, even as blind copies. Response:

A CD labeled with the plaintiff's name is provided that contains a Lotus Notes "nsf" file that was retrieved from the backups from the evening of April 22, 2004. This file contains all the e-mail and calendar information that was stored in the Lotus Notes system on that date.

Request for Production #2:

Content of Electronic mail files put on CD (not paper document) in lotus notes of Shelley Yak's email files (also known as "names.nsf" files) for the period 9/7/03 to 4/27/04, including all previously deleted or purged electronically stored information and electronic documents – including, but not limited to, the contents of the inbox, directories and sub-directories (such as sent items), calendars, etc. This request includes all electronically stored information and electronic documents which were stored, transmitted or received, even as blind copies.

OBJECTION:       Defendant objects to this request because it is overbroad and not specifically and narrowly tailored to relevant claims and defense of any party. Further, defendant objects because it is unduly burdensome.

Response:

A CD labeled with Shelley Yak's name is provided that contains a Lotus Notes "nsf" file that was retrieved from the backups from the evening of April 22, 2004. This file contains all the email and calendar information that was stored in the Lotus Notes system on that date.

Request for Production #3:

Content of Electronic mail files put on CD (not paper document) in lotus notes of
Gary Albert's email files (also known as "names.nsf" files) for the period 9/7/03 to
4/27/04, including all previously deleted or purged electronically stored
information and electronic documents – including, but not limited to, the contents
of the inbox, directories and sub-directories (such as sent items), calendars, etc.
This request includes all electronically stored information and electronic
documents which were stored, transmitted or received, even as blind copies.

OBJECTION:        Defendant objects to this request because it is overbroad and
                  not specifically and narrowly tailored to relevant claims and
                  defense of any party. Further, defendant objects because it is
                  unduly burdensome.

Response:

A CD labeled with the Gary Albert's name is provided that contains a Lotus Notes
"nsf" file that was retrieved from the backups from the evening of April 22, 2004.
This file contains all the email and calendar information that was stored in the
Lotus Notes system on that date.

Request for Production #4:

Content of Electronic mail files put on CD (not paper document) in lotus notes of
Sue Lake's email files (also known as "names.nsf" files) for the period 9/7/03 to
4/27/04, including all previously deleted or purged electronically stored
information and electronic documents – including, but not limited to, the contents
of the inbox, directories and sub-directories (such as sent items), calendars, etc.
This request includes all electronically stored information and electronic
documents which were stored, transmitted or received, even as blind copies.

OBJECTION:        Defendant objects to this request because it is overbroad and
                  not specifically and narrowly tailored to relevant claims and
                  defense of any party. Further, defendant objects because it is
                  unduly burdensome.

Response:

A CD labeled with the Sue Lake's name is provided that contains a Lotus Notes
"nsf" file that was retrieved from the backups from the evening of April 22, 2004.
This file contains all the email and calendar information that was stored in the
Lotus Notes system on that date.

Request for Production #5:

Content of Electronic mail files put on CD (not paper document) in lotus notes of Robert Linn's email files (also known as "names.nsf" files) for the period 9/7/03 to 4/27/04, including all previously deleted or purged electronically stored information and electronic documents – including, but not limited to, the contents of the inbox, directories and sub-directories (such as sent items), calendars, etc. This request includes all electronically stored information and electronic documents which were stored, transmitted or received, even as blind copies.

OBJECTION:    Defendant objects to this request because it is overbroad and not specifically and narrowly tailored to relevant claims and defense of any party. Further, defendant objects because it is unduly burdensome.

Response:

A CD labeled with the Robert Linn's name is provided that contains a Lotus Notes "nsf" file that was retrieved from the backups from the evening of April 22, 2004. This file contains all the email and calendar information that was stored in the Lotus Notes system on that date.

Request for Production #6:

In electronic format, the Microsoft Word document representing the timeline allegedly prepared by Shelley Yak which is identified as Exhibit A herein, the timeline which is identified as Exhibit B herein, the timeline which is identified as Exhibit C herein, the removal notice, dated April 24, 2004, identified as Exhibit D herein, and the removal notice , dated April 24, 2004, identified as Exhibit E herein.

Response:

A CD labeled Stephen Omogbehin Information Requests contains a folder called "Request for Production 6". This folder contains the five files described above.

Request for Production #7:

In electronic format, all copies of every version of the "before and after" pictures of the NCC (formerly ACX-20 Data Center) from Jose Pereda.

Response:

A CD labeled Stephen Omogbehin Information Requests contains a folder called "Request for Production 7". This folder contains the pictures described above. It is believed that only "after" pictures were taken and that all photographs include "after" pictures.

Request for Production #8:

In "wave file" format voice mailbox content of Stephen Omogbehin of April 23, 2004.

OBJECTION:       Defendant objects to this request because it is unduly burdensome.

Response:

No "wave file" format exists that matches the description from this request for production. A weekly backup tape of the voice mail system has been retained that was created on April 26, 2004. It contains the contents of all of the voice mail boxes on the phone system as of that date. This tape was retained from the normal recycle process at the request of the plaintiff. An additional backup tape from April 9, 2004 also exists.

Since the creation of this tape, the voice mail system has been replaced along with all of the associated equipment. We no longer have the ability to restore the tape at the Technical Center.

Request for Production #9:

The ACX-20 strategic plan document submitted by Shelley Yak to the Senior Leadership team prior to plaintiff's initial hire, which document was approved by the FAA Tech Center.

Response:

No document exists that matches the description from this request for production.

Request for Production #10:

In electronic format, all locally (desktop document) stored in Microsoft Word, Excel and Powerpoint of plaintiff and Shelley Yak for the period 9/7/03 to 4/27/04, including all previously deleted or purged electronically stored information and electronic documents..

    OBJECTION:    Defendant objects to this request because it is not specifically and narrowly tailored to relevant claims and defense of any party. Further, defendant objects because it is unduly burdensome.

Response:

Plaintiff's desktop:
A CD labeled Steve Omogbehin contains two folders: R00535Tower and R00318Laptop. These folders contain images of the hard drives from the two desktop devices that Stephen Omogbehin used.

Shelley Yak's desktop:
Shelley Yak has no Microsoft Word, Excel or Powerpoint files stored on her desktop.

Request for Production #11:

In electronic format, all customer satisfaction survey questionnaires sent out by ACX-20 and customer responses to such questionnaires for the period 9/7/03 through 4/24/04..

Response:

A CD labeled Stephen Omogbehin Information Requests contains a folder called "Request for Production 11". This folder contains individual files for each questionnaire and customer responses that were returned by the customer for the described period.

Interrogatory #1:

For each electronic-format copy of every version of the "before and after" picture of the NCC (formerly ACX-20 Data Center) from Jose Pereda produced by defendant in response to the request for production, identify the location (directory, file, or other source) where said responsive document were located.

Response:

The following folders contain pictures of the NCC:

- Shared/ACX/ACX020-Workarea/NCC Pictures/2003_10_06 (22 pictures)
- Shared/ACX/ACX020-Workarea/NCC Pictures/2003_10_22 (5 pictures)
- Shared/ACX/ACX020-Workarea/NCC Pictures/2003_11_22 RackB (12 pictures)
- Shared/ACX/ACX020-Workarea/NCC Pictures/2004_02_15 RackA (12 pictures)

It is believed that only "after" pictures were taken and that all photographs are "after" pictures.

Interrogatory #2:

Identify all individuals responsible, in any manner, for the extraction action of any "wave file" format voice mailbox content of Stephen Omogbehin of April 23, 2004, the location of the tape, tag number and process used to extract the wave file and where the tape is currently located.

Response:

No "wave file" format exists that matches the description from this interrogatory. A weekly backup tape of the voice mail system has been retained that was created on April 26, 2004. It contains the contents of all of the voice mail boxes on the phone system as of that date. This tape was retained from the normal recycle process at the request of the plaintiff. An additional backup tape from April 9, 2004 also exists.

Since the creation of this tape, the voice mail system has been replaced along with all of the associated equipment. There is no longer the ability to restore the tape at the Technical Center.

Interrogatory #3:

State in detail and with specificity all efforts taken by the FAA to preserve the electronic information identified in the attached 4/27/04 letter (Exhibit 1) and identify all individuals responsible for any and all preservation actions taken.

Response:

- Carl Henry created an image copy of the hard drive of Stephen Omogbehin's work station.
- The workstation was secured by the Alfred Lisicki
- The contents of Stephen Omogbehin's physical files were cataloged by Alfred Liscki and secured in boxes.
- The boxes were sent to Walter Vernon who stored them in a secured area.
- The backup tape of the Lotus Notes email system was secured in the desk of Cleve Laswell
- The backup tape of the voice mail system was secured in the desk of Gary Albert.

Interrogatory #4:

Describe all types of email programs used at the FAA Technical Center, Atlantic City during the period September 10, 2003 until the present time.

Response:

There has been only one Post Office on the email system for the time period. That system is Lotus Notes.

| | |
|---|---|
| Name and Version | Lotus Notes 5.0.12, Lotus Notes 6.5 |
| Installation Date | 6/11/2003, 5/27/2004 |
| (app) # of Users | 2800 |
| Loc of mail files. | Primary mail file storage on Domino mail server, secondary mail file storage location on user's machine as a replica of the server file, also user's option to place files in archive on local machine. |

Interrogatory #5:

During the period September 10, 2003 through the present time, please identify all FAA employees, contractors and contractor personnel who have been or who are currently responsible for administering, supporting and managing the electronic email system and access to network resources including deletion of

## VERIFICATION

Pursuant to the provisions of 28 U.S.C. § 1746, Shelley J. Yak, William J. Hughes Technical Center, Federal Aviation Administration, United States Department of Transportation, declares under the penalty of perjury under the laws of the United States of America that the foregoing responses to the above interrogatories are true and correct, to the best of my knowledge, information, and belief.

Shelley J. Yak
Manager, Operations, Technology
& Acquisitions
William J. Hughes Technical Center
Federal Aviation Administration
Atlantic City Int'l Airport, NJ 08405

Date: April 27, 2007