# Exhibit 6

CHRISTOPHER J. CHRISTIE
United States Attorney
KAREN H. SHELTON
Assistant United States Attorney
402 East State Street
Trenton, NJ 08608
Tel. (609) 989-0562
email: Karen.Shelton@usdoj.gov

**Filed Electronically**

*UNITED STATES DISTRICT COURT*
*DISTRICT OF NEW JERSEY*

| | |
|---|---|
| STEPHEN OMEGBEHIN,<br><br>*Plaintiff(s),*<br><br>v.<br><br>MARIA CINO, ACTING SECRETARY OF THE DEPARTMENT OF TRANSPORTATION,<br><br>*Defendant(s).* | HON. JOSEPH E. IRENAS<br><br>*Civil Action No.* 06-4581<br><br>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL |

## I.  INTRODUCTION

Plaintiff Stephen Omogbehin seeks to compel Defendant in the above-entitled matter to produce the physical backup tape containing the Lotus Notes email inboxes of all FAA Tech Center employees, the physical backup tape containing all the voice mail inboxes of all FAA Tech Center employees, as well as the physical desktop and laptop computers used by Plaintiff during his employment with the FAA Tech Center.  See Plaintiff's Memorandum at 2.

Defendants oppose the production of the Lotus Notes backup tape on the grounds that (i) producing the tape would be cumulative and duplicative, as the

# DECLARATION OF GARY ALBERT

I, Gary Albert, declare under penalty of perjury that the following statements are true to the best of my knowledge, information provided to me, and/or belief:

1.      I am employed at the William J. Hughes Technical Center ("Tech Center") where I am the manager of the Enterprise Data Center.

2.      At the time Stephen Omogbehin was employed at the Tech Center, I was the manager of the Information Technology Services Group, and thereafter became the acting manager of the Information Technology Division.

3.      As an information technology manager, I have knowledge of the information technology operations at the Tech Center, including the email system used by Tech Center employees.

4.      Email users at the Tech Center operate their accounts through a program known as Lotus Notes, which is a network based email system. Each employee has their own individual account on the Lotus Notes network. There are nearly 3000 federal and contract employees at the Tech Center.

5.      There are two methods in which employee email is retained – (a) Lotus Notes backups and (b) employee archiving.

6.      Email accounts are backed-up nightly onto tapes by the Information Technology staff. This includes email and electronic calendar information currently on the Lotus Notes server. The nightly backup tape does not include material that has either been deleted or that has been archived by the employee in the twenty-four hour period between that last nightly backup.

7.      The nightly Lotus Notes backup is recorded to a data tape which includes every employee at the Tech Center, including numerous high ranking officials such as the Tech Center Director, the Federal Aviation Administration's ("FAA") Chief Scientist, and the FAA's Director of Airport and Aircraft Safety.

8.      Additionally, many employees at the Tech Center have security clearances for varying levels of classified information, including information contained in email and attachments to email.

9.      Email is also retained by permanently moving email and electronic information from the employee's Lotus Notes account to either the hard disk drive ("HDD") on the computer assigned to the employee for their use, or some other HDD, such as a shared HDD, where such information is stored as an archive.

10.     The archive is personal to the user. It is not backed-up as part of the Lotus Notes backup process.

11.     The archiving of information is necessary because of size limits for Lotus Notes accounts, which was limited to 80 megabytes of information (at the time Stephen Omogbehin was employed) for each employee's account.  Once this limit is reached the employee must either delete information, or move information to the personal archive.

12.     When Lotus Notes is installed on an employee's computer, automatic archiving of electronic information to the employee computer's HDD for information over thirty (30) days old is set as the default.  An employee may thereafter adjust the default settings, such as increasing the number of days for automatic archiving, or changing the location of the stored archived information.

13.     On the day Stephen Omogbehin was terminated, the Lotus Notes backup tape, which included every employee's account, was preserved.  The backup tape that was preserved was the nightly backup for April 22, 2004, the day before Stephen Omogbehin was terminated, as the backup for April 23, 2004, had not yet been created.  Again, the Lotus Notes backups did not include archived electronic information which was stored separately by each employee either on their computer's HDD, or some other HDD to which they had access.

14.     When a Lotus Notes backup tape is loaded onto the Lotus Notes system, all employee accounts stored on the tape are accessible.  An individual employee's email account (and all its contents) can then be restored by downloading that person's account from the tape onto a CD.

15.     During the course of the district court litigation, Agency Counsel Jay Fox requested that I obtain the email from restored Lotus Notes backup tapes (from the nightly backup of April 22, 2004) from a number of employees for the dates September 7, 2003 to April 27, 2004.  These employees included myself, Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, Allan Cannizzaro, Ron Smith, Tom Christian, and Stephen Omogbehin.

16.     In order to comply with this request, I asked Cleve Laswell, the then Lotus Notes Administrator, to load the backup tape onto the system and download to CD the Lotus Notes files for each of the above individuals.

17.     Cleve Laswell gave me CDs that included the Lotus Notes files from the backup tape of myself, Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, Allan Cannizzaro, Tom Christian, Ron Smith and Stephen Omogbehin.  I provided these CDs to Agency Counsel Jay Fox for production.  I did not delete or remove any electronic information from these CDs in any manner.

18.     Jay Fox also requested that I obtain the archived emails for the same individuals that were stored on each one's desktop HDD.  Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, Allan Cannizzaro were instructed to copy their archived email folders onto a system shared HDD (Christian, Smith and Omogbehin were no longer employed by the FAA at the time of this request).  I moved my archived email folder there as well.  Once the employees had moved their archived email files to the shared HDD, I instructed Cleve Laswell to download the archived emails to CDs.  Cleve provided me with CDs containing the archived email files for myself, Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, and Allan Cannizzaro.  I provided these

CDs to Agency Counsel Jay Fox. I did not delete or remove any electronic information from these CDs in any manner.

19.     No archived emails for Thomas Christian or Ron Smith were ever downloaded or produced on CD. By the time the request for such archived emails were made, they had left their employment and their hard disk drives had been recycled in the ordinary course of business.

20.     As for Stephen Omogbehin's archived email, I obtained Stephen's laptop computer from Margaret Lattanzi-Baird, who was responsible for its preservation. I brought the laptop to Cleve Laswell so that he could download any emails archived on the laptop HDD.

21.     Cleve reported to me that Stephen had not archived his emails information on the laptop's hard disk drive. Instead, he had archived his information to a shared HDD on the larger system network.

22.     By 2007, the shared HDD in which Stephen Omogbehin archived his information was no longer available. It was recycled as part of routine information technology maintenance procedures.

23.     However, in or about 2005, during the administrative EEO proceedings, Cleve Laswell was asked to produce all of Stephen Omogbehin's emails for Agency Counsel. Cleve consulted with me about the form in which those emails should be produced, and Agency Counsel instructed me that these should be printed and produced.

24.     Cleve notified me when he had completed this task, and told me that he had printed approximately 5000 pages of Stephen Omogbehin's email. This estimate is based upon the amount of produced printed material, which filled a box used for a standard case of copy paper (approximately 10 reams of copy paper).

25.     I notified Agency Counsel Jay Fox that the emails had been printed.

26.     In or about 2007, I asked Cleve where he had located the emails he had printed in 2005. Cleve informed me that he took the emails from Stephen's files located on the Lotus Notes backup tape, as well as from an email archive that Stephen had maintained on shared HDD on the larger system network. Accordingly, although the archived emails were not produced on CD during the district court litigation in 2007, they had already been produced once in print form in 2005.

27.     In or about May 2004, Carl Henry provided me, as the IT manager and former manager of Stephen Omogbehin, with a CD he created from information downloaded from the HDDs of the laptop and desktop computers assigned to Stephen Omogbehin. At the time the CD was provided to me, I understood it to contain a full copy ("mirror images") of the contents of each computer's HDD.

28.     During the course of this litigation, Agency Counsel Jay Fox requested a copy of the CD. I copied the CD and provided it to him. I did not delete or remove any electronic information from the CD during replication.

29.     In preparing this declaration, Jay Fox asked me to confirm the contents of the CD which I believed to contain the mirror images of Stephen Omogbehin's desktop and laptop HDDs. I reviewed the CD alongside Carl Henry, who had originally produced it. Carl stated that the CD only contained Lotus Notes files. Thereafter, Jay Fox asked Carl to immediately make a full mirror image of Stephen's laptop computer, which he had in his possession.

30.     In order to ensure that a full mirror image for Stephen's desktop HDD was made, I looked for the desktop in the location where I last believed it to be secured, the office of Margaret Lattanzi-Baird. I could not find the desktop computer. I searched the asset inventory record system for the FAA, looking for the barcode of the desktop computer. I determined from the record system that the desktop computer had been "salvaged," that is, sent to an outside contractor for destruction.

Gary Albert
William J. Hughes Technical Center
Federal Aviation Administration
Department of Transportation

DATED:  April 25, 2008

## DECLARATION OF ADRIENNE CALDERONE

I, Adrienne Calderone, declare under penalty of perjury that the following statements are true to the best of my knowledge, information provided to me, and/or belief:

1.    I am employed as a telecommunications specialist at the William J. Hughes Technical Center ("Tech Center"), and I was similarly employed as a telecommunications specialist at the time Stephen Omogbehin was employed at the Tech Center.

2.    As a telecommunications specialist, I have knowledge of the telephone voice mail system utilized at the Tech Center.

3.    At the time Stephen Omogbehin was employed at the Tech Center, the telephone voice mail system was supplied by Nortel Government Solutions.

4.    The entire telephone voice mail system, which contained the telephone voice mail accounts of all federal and contract employees at the Tech Center, including phone messages preserved by employees, was backed-up at two-week intervals on to a backup tape.

5.    The voice mail backups included every employee at the Tech Center, including numerous high ranking officials such as the Tech Center Director, the Federal Aviation Administration's ("FAA") Chief Scientist, and the FAA's Director of Airport and Aircraft Safety

6.    In response to a request by Agency Counsel for Stephen Omogbehin's preserved voice mails, and at significant expense to the agency without a guarantee of success, Nortel performed a restoration of two sets of backup tapes – one from April 9, 2004 and one from April 27, 2004 - in an attempt to retrieve Stephen Omogbehin's preserved voice mails (See communications from Nortel dated June 5, 2007, and October 5, 2007, respectively marked as Exhibits 1 and 2).

7.    The tapes from April 9 were unreadable. This could be because of the age of the tape, the number of times the tape was recorded over, or the tape could have otherwise been damaged or corrupted. The tapes from April 27 were successfully read and four voicemails for Stephen Omogbehin were sent to the FAA via .wav file. Both sets of tapes were returned to the FAA.

8.    As a result of Nortel's restoration efforts, four voice messages were retrieved, recorded in digital format, and provided to Agency Counsel. I did not alter, delete or remove in any manner any of the voicemails retrieved from the tapes.

*Adrienne Calderone*

Adrienne Calderone
William J. Hughes Technical Center
Federal Aviation Administration
Department of Transportation

DATED: 4/23/08

## DECLARATION OF JAY M. FOX

       I, Jay M. Fox, declare under penalty of perjury that the following statements are true to the best of my knowledge, information provided to me, and/or belief:

1.     I am employed as Agency Counsel at the William J. Hughes Technical Center ("Tech Center") where I am responsible for the processing of employment litigation.

2.     I was lead counsel for the underlying EEOC proceedings in the matter of Stephen Omogbehin v. Department of Transportation, EEOC Hearing No. 170-2005-0044X. During those proceedings I was responsible for the processing of all discovery requests made by Stephen Omogbehin, the complainant. In that capacity, I became familiar with various information technology systems and procedures used at the FAA TechCenter.

3.     As Agency Counsel, I have been the Agency point of contact in this District Court litigation for the processing of all discovery requests, including electronic discovery requests, made by Stephen Omogbehin, the plaintiff. In my representation of the agency during these proceedings, I became familiar with various information technology systems and procedures used at the FAA TechCenter. If called to testify, I could and would testify truthfully as follows:

4.     In this litigation, plaintiff has requested the electronic mail ("email") files of the following individuals: Stephen Omogbehin, Shelley Yak, Gary Albert, Sue Lake, Robert Linn, Thomas Christian, Alan Cannizzaro, Ron Smith, and Cindy Keiser-Ellis. The requested range of dates for the emails was from September 2003, the month of plaintiff's hiring, to April 27, 2004, four days after plaintiff was terminated.

5.     Email users at the Tech Center operate their accounts through a program known as Lotus Notes, which is a network based email system. Each employee has their own individual account on the Lotus Notes network. There are nearly 3000 federal and contract employees at the Tech Center.

6.     There are two methods in which employee email is retained – (a) Lotus Notes backups and (b) employee archiving.

7.     Email accounts are backed-up nightly by the Information Technology staff. This includes email and electronic calendar information currently on the Lotus Notes server. The nightly backup does not include material that has either been deleted or that has been archived by the employee in the twenty-four hour period between that last nightly backup.

8.     The nightly Lotus Notes backup is recorded to an electronic medium which includes every employee at the Tech Center, including numerous high ranking officials such as the Tech Center Director, the Federal Aviation Administration's ("FAA") Chief Scientist, and the FAA's Director of Airport and Aircraft Safety.

9.     Additionally, many employees at the Tech Center have security clearances for varying levels of classified information, including information contained in email and attachments to email.

10.     Email is also retained by permanently moving email and electronic information from the employee's Lotus Notes account to either the hard disk drive ("HDD") on the computer assigned to the employee for their use, or some other HDD, such as a shared HDD, where such information is stored as an archive.

11.     The archive is personal to the user.  It is not backed-up as part of the Lotus Notes backup process.

12.     The archiving of information is necessary because of size limits for Lotus Notes accounts, which was limited to 80 megabytes of information (at the time plaintiff was employed) for each employee's account.  Once this limit is reached the employee must either delete information, or move information to the personal archive.

13.     When Lotus Notes is installed on an employee's computer, automatic archiving of electronic information to the employee computer's HDD for information over thirty (30) days old is set as the default.  An employee may thereafter adjust the default settings, such as increasing the number of days for automatic archiving, or changing the location of the stored archived information.

14.     On the day plaintiff was terminated, the Lotus Notes backup, which included every employee's account, was preserved.  The backup that was preserved was the nightly backup for April 22, 2004, the day before plaintiff was terminated, as the backup for April 23, 2004, had not yet been created.  Again, the Lotus Notes backups did not include archived electronic information which was stored separately by each employer either on their computer's HDD, or some other HDD to which they had access.

15.     When a Lotus Notes backup tape is loaded onto the Lotus Notes system, all employee accounts stored on the tape are accessible.  An individual employee's email account (and all its contents) can then be restored by downloading that person's account from the tape onto a CD.

16.     In 2007, in response to discovery requests in the district court litigation, I asked Gary Albert, the Tech Center's Information Technology Manager, to  restore the email accounts from the Lotus Notes backup tapes (from the nightly backup of April 22, 2004), for a number of employees, for the dates September 7, 2003, to April 27, 2004.  These employees included Gary Albert, Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, Allan Cannizzaro, Ron Smith, Tom Christian, and Stephen Omogbehin.

17.     Gary provided me with CDs that contained the Lotus Notes files from the backup tapes for the above individuals.

18.     I produced the CDs for Gary Albert, Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, and Stephen Omogbehin, unaltered and in their entirety, to Assistant United States Attorney (AUSA) Jafer Aftab to produce to Plaintiff's counsel.  I did not delete or remove any electronic information from these CDs in any manner.

19.     Alan Cannizzaro is a Labor Relation specialist employed at the Tech Center. Therefore, I reviewed the contents of his email folder on the CD, and produced only information pertaining to the plaintiff to the AUSA.

20.     Thomas Christian was a Labor Relation specialist employed at the Tech Center. Therefore, I reviewed the contents of his email folder on the CD, and produced only information pertaining to the plaintiff to the AUSA.

21.     Ron Smith was the manager of Human Resources at the Tech Center.  Therefore, I reviewed the contents of his email folder on the CD, and produced only information pertaining to the plaintiff to the AUSA.

22.     Also in 2007, in response to discovery requests in the district court litigation, I asked Gary Albert to download the archived emails of Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, Alan Cannizzaro and Stephen Omogbehin from their desktop HDDs. Because Thomas Christian and Ron Smith had left their employment by that time, their hard disk drives had been recycled and no archived information existed for them.

23.     Gary Albert provided me with CDs that contained the archived email files of Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, Alan Cannizzaro, as well as his own archived email files.  I provided these CDs to Assistant United States Attorney (AUSA) Jafer Aftab to produce to Plaintiff's counsel.  With the exception of Alan Cannizzaro, I did not delete or remove any electronic information from these CDs in any manner.  Because Alan was a Labor Relation specialist, I produced only those emails from his archive which pertained to Plaintiff.

24.     Gary was unable to provide me with a CD containing Stephen Omogbehin's archived emails.  He explained to me that Stephen had not archived his emails to the HDD of his laptop, but had been archiving his information to a shared HDD on the larger system network.

25.     Gary further informed me that at the time the district court litigation discovery requests were made, the shared HDD in which Stephen archived his information was no longer available.  It had been recycled as part of routine information technology maintenance procedures.

26.     Fortunately, the shared HDD containing plaintiff's archived email still existed in 2005, during Stephen Omogbehin's EEOC proceedings.

27.     Pursuant to a discovery request made during the EEOC proceedings in 2005, I had requested that IT personnel print a copy of all of Stephen Omogbehin's Lotus Notes emails.

28.     Cleve Laswell gave me approximately 5000 pages of plaintiff's printed email material.  This estimate is based upon the amount of produced printed material, which filled a box used for a standard case of copy paper (about 10 reams of paper).  I produced these printed emails to Stephen Omogbehin's counsel in the EEOC proceedings.  A true and correct copy of the cover letter sent to his counsel with the printed material is attached hereto as Exhibit 1

29.     In response to inquiries I made in 2007, Cleve Laswell informed me that the emails he printed and produced to me in 2005 were taken from Lotus Notes backup tapes and the shared HDD where Stephen had archived email.  Accordingly, Plaintiff has already received printed copies of all of his email -- both those in his inbox and those he archived.

30.     Emails from plaintiff's printed archive were marked and used by plaintiff as exhibits at the hearing of the EEOC proceedings.

31.     In response to paragraph 6 of plaintiff's declaration, the electronic information on the CDs was complete without deletions and when viewed in total (to be explained momentarily) does not contain gaps.

32.     In response to paragraph 6 of plaintiff's declaration, the only exception to completeness was the electronic information produced for Alan Cannizzaro, Thomas Christian, and Ron Smith, for the reasons set for in paragraphs 19, 20, 21 and 23 of my declaration.

33.     In response to paragraph 7 of plaintiff's declaration, two CDs were created with Sue Lake's information, one with the restored Lotus Notes backup for her email account, and one with her archived information.  When reviewed together, there is no gap as alleged by plaintiff.  Any gap in the Lotus Notes backup is due only to the fact that Sue Lake had archived information on the subject dates.  In fact, there are over 200 emails, email receipts and/or other entries from March 25, 2004, through April 7, 2004, in Sue Lake's archived material.  And over 3000 emails exist for the entire archive dates requested - September 2003 - April 27, 2004.

34.     In response to paragraph 8 of plaintiff's declaration, two CDs were created with Robert Linn's information, one with the restored Lotus Notes backup for his email account, and one with his archived information.  When both sources are reviewed together, there is no gap as alleged by plaintiff.

35.     For the dates between February 24, 2004, and March 5, 2004, there are 14 separate emails contained on the CD of Robert Linn's restored Lotus Notes backup.  These emails do not exist on the CD containing Robert Linn's archived material,

indicating that Robert Linn chose either not to archive that material, or he deleted the emails prior to archiving for those dates. Either way, emails exist for those dates when both sources of electronic information are viewed together.

36.     For the dates between March 23, 2004, and April 11, 2004, there are 42 separate emails on the CD containing Robert Linn's restored Lotus Notes backup. These emails do not exist on the CD containing Robert Linn's archived material, indicating that Robert Linn chose either not to archive that material, or he deleted the emails prior to archiving for those dates. Either way, emails exist for those dates when both sources of electronic information are viewed together.

37.     In response to paragraph 9 of plaintiff's declaration, there is voluminous calendar information for both Gary Albert and Sue Lake on the CDs containing their archived electronic information.

38.     In order to access the aforementioned calendar information, one must mouse click on a box in the top left corner which reads "Mail Archive." By doing so, one can switch to the calendar archive and access the calendar information for any archive which has been provided pursuant to plaintiff's discovery requests. In fact, upon my review, the calendar archives for both Gary Albert and Sue Lake actually go well beyond the requested end date of April 27, 2004, with archived calendar dates going into 2005 for Gary Albert and archived calendar dates going into 2007 for Sue Lake.

39.     Upon a separate review of the archived electronic material of Robert Linn, no calendar information was preserved indicating that Robert Linn either did not archive his calendar or he deleted entries prior to archiving. However, calendar entries were preserved in Robert Linn's Lotus Notes backup.

40.     In response to paragraphs 10 through 12 of plaintiff's declaration, plaintiff's restored Lotus Notes backup contains forty-one (41) email subfolders. Seventeen (17) of the email subfolders are empty, most likely because the information in those subfolders had been archived, as the oldest email in plaintiff's entire Lotus Notes backup is from February 23, 2004, just two months before he was fired, and consistent with a user designated automatic archive setting of sixty (60) days.

41.     As previously stated, plaintiff's emails from his archived information, although printed as part of the EEOC proceedings, no longer exist in electronic format, and therefore would not be found in any of the aforementioned subfolders.

42.     In response to paragraph 13 of plaintiff's declaration, and in similar vein to what has just been stated regarding plaintiff's subfolders, many of Gary Albert's restored Louts Notes subfolders are empty, because the information in those subfolders had been archived. Consistent with this assertion, when Gary Albert's archived emails are viewed, many of those same folders contain archived emails.

43.     In response to paragraph 13 of plaintiff's declaration, Sue Lake advised me that her email subfolders predate the use of Lotus Notes, and were created for the previous email server system. Sue Lake informed me that she does not use subfolders to store her current or archived emails.

44.     I have reviewed the archived emails of Sue Lake (which as previously stated were produced to the plaintiff). Sue Lake's produced archive contains 3,312 emails.

45.     In response to paragraph 14 of plaintiff's declaration, at the time plaintiff was employed at the Tech Center, the telephone voice mail system was supplied by Nortel Government Solutions.

46.     The entire telephone voice mail system, which contained the telephone voice mail accounts of all federal and contract employees at the Tech Center, including phone messages preserved by employees, was backed-up at two-week intervals on to a backup tape.

47.     As with the Lotus Notes system, because the voice mail backups included every employee at the Tech Center, it necessarily included numerous high ranking officials as detailed in paragraph 8 of my declaration.

48.     Further, because the voice mail backups included every employee at the Tech Center, it necessarily included many employees at the Tech Center with security clearances for varying levels of classified information, including information that may have been discussed in preserved voice mails.

49.     In response to a discovery request for plaintiff's preserved voice mails, at significant expense to the agency, I requested and Nortel performed a restoration in an attempt to retrieve plaintiff's preserved voice mails. True and correct copies of communications from Nortel dated June 5, 2007, and October 5, 2007 are attached hereto as Exhibits 2 and 3.

50.     Nortel informed me that one of the backup tapes was unreadable. From the remaining tape, Nortel restored four voice messages, recorded in digital format, and provided them to me. I provided copies of the messages in .wav file format to Assistant United States Attorney Karen Shelton for production to Plaintiff. I did not alter, delete or remove any voice messages transmitted by Nortel in any manner.

51.     In response to paragraphs 20 and 21 of plaintiff's declaration, and at the request of the plaintiff in his letter of April 27, 2004 (attached to plaintiff's declaration as Exhibit-A), Plaintiff's laptop and desktop computers, as well as the contents of his office, were preserved and inventoried on or about May 11, 2004. At that time, Tech Center employee Carl Henry created a CD which I believed was a full copy ("mirror image") of each Hard Disk Drive ("HDD") for the laptop and desktop computers assigned to Stephen Omogbehin while he was employed at the Tech Center. He provided this CD to Gary Albert.

52.     Thereafter, in response to plaintiff's discovery requests in this district court litigation, Gary Albert gave me the CD which Carl Henry created, which I believed to be the mirror image copies of Plaintiff's HDDs. The CD was copied and I gave the CD to AUSA Jafer Aftab for production to the Plaintiff.

53.     In preparing my declaration and in responding to Plaintiff's declaration, I asked Gary Albert to confirm that full mirror images of Plaintiff's two HDDs were on the CD. I reviewed the CDs with Gary Albert and Carl Henry, and Carl Henry stated that the CD only contained Lotus Notes files. Thereafter, I took possession of Stephen's laptop, which had been preserved, and asked Carl to immediately make a full mirror image of the laptop HDD. I will provide copies of the AUSA as soon as the imaging is complete.

54.     I was unable to locate Stephen's desktop computer to have a mirror image of that made as well. I instructed Gary Albert to continue looking for the desktop computer. Gary has since informed me that the desktop computer has already been salvaged, that is, sent to a contractor for destruction.


Jay M. Fox, Agency Counsel
William J. Hughes Technical Center
Federal Aviation Administration
Department of Transportation

DATED: 4/25/08

# DECLARATION OF CARL HENRY JR.

I, Carl Henry Jr., declare under penalty of perjury that the following statements are true to the best of my knowledge, information provided to me, and/or belief:

1.     I am employed as a computer specialist at the William J. Hughes Technical Center ("Tech Center"), and I was employed in that same capacity at the time Stephen Omogbehin was employed at the Tech Center.

2.     In 2004, one of my assigned duties as a computer specialist was to assist Tech Center security with preservation of information from employee computers.

3.     In or about May of 2004, I downloaded the Lotus Notes data directory files from each Hard Disk Drive ("HDD") for the laptop and desktop computers assigned to Stephen Omogbehin while he was employed at the Tech Center, and saved the information to CDs.

4.     I did not download an entire mirror image of the laptop and desktop computers.

5.     The aforementioned CDs were provided to Gary Albert.

6.     In preparing for this declaration, Agency Jay Fox asked me to confirm that I had downloaded an entire mirror image of Stephen Omogbehin's laptop and desktop HDDs. I reviewed the CDs and informed him that I had only downloaded the Lotus Notes data directory files. Thereafter, Agency Counsel Jay Fox asked me to immediately make an entire mirror image of Stephen Omogbehin's laptop computer, which he had in his possession. I am currently in the process of downloading that information and will provide it to Agency Counsel when the task is complete.

Carl Henry Jr.
William J. Hughes Technical Center
Federal Aviation Administration
Department of Transportation

DATED:   24 APR 08

## DECLARATION OF CLEVE LASWELL

I, Cleve Laswell, declare under penalty of perjury that the following statements are true to the best of my knowledge, information provided to me, and/or belief:

1.    I am a contract employee of Apptis assigned to the William J. Hughes Technical Center ("Tech Center") as the Enterprise Data Center Project Manager.

2.    At the time Stephen Omogbehin was employed at the Tech Center, I was a contract employee of Apptis assigned to the Tech Center as the Lotus Notes Administrator.

3.    As the former Lotus Notes Administrator, I have knowledge of the information technology operations at the Tech Center related to the Lotus Notes email system used by Tech Center employees.

4.    Email users at the Tech Center operate their accounts through a program known as Lotus Notes, which is a network based email system. Each employee has their own individual account on the Lotus Notes network. There are nearly 3000 federal and contract employees at the Tech Center.

5.    There are two methods in which employee email is retained – (a) Lotus Notes backups and (b) employee archiving.

6.    Email accounts are backed-up nightly by the Information Technology staff. This includes email and electronic calendar information currently on the Lotus Notes server. The nightly backup does not include material that has either been deleted or that has been archived by the employee in the twenty-four hour period between that last nightly backup.

7.    The nightly Lotus Notes backup is recorded to an electronic medium which includes every employee at the Tech Center, including numerous high ranking officials such as the Tech Center Director, the Federal Aviation Administration's ("FAA") Chief Scientist, and the FAA's Director of Airport and Aircraft Safety.

8.    Additionally, many employees at the Tech Center have security clearances for varying levels of classified information, including information contained in email and attachments to email.

9.    Email is also retained by permanently moving email and electronic information from the employee's Lotus Notes account to either the hard disk drive ("HDD") on the computer assigned to the employee for their use, or some other HDD, such as a shared HDD, where such information is stored as an archive.

10.    The archive is personal to the user. It is not backed-up as part of the Lotus Notes backup process.

11.     The archiving of information is necessary because of size limits for Lotus Notes accounts, which was limited to 80 megabytes of information (at the time Stephen Omogbehin was employed) for each employee's account. Once this limit is reached the employee must either delete information, or move information to the personal archive.

13.     When Lotus Notes is installed on an employee's computer, automatic archiving of electronic information to the employee computer's HDD for information over thirty (30) days old is set as the default. An employee may thereafter adjust the default settings, such as increasing the number of days for automatic archiving, or changing the location of the stored archived information.

14.     When a Lotus Notes backup tape is loaded onto the Lotus Notes system, all employee accounts stored on the tape are accessible. An individual employee's email account (and all its contents) can then be restored by downloading that person's account from the tape onto a CD.

15.     In 2007, during this district court litigation, Gary Albert requested that I restore the email accounts from the Lotus Notes backup tapes (from the nightly backup of April 22, 2004), for a number of employees, for the dates September 7, 2003, to April 27, 2004. These employees included Gary Albert, Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, Allan Cannizzaro, Ron Smith, Tom Christian, and Stephen Omogbehin.

16.     I restored the Lotus Notes backup account for Gary Albert, and downloaded them to CD. I did not delete or remove any electronic information from either source in any manner.

17.     I restored the Lotus Notes backup account for Shelley Yak, and downloaded them to CD. I did not delete or remove any electronic information from either source in any manner.

18.     I restored the Lotus Notes backup account for Sue Lake for Sue Lake, and downloaded them to CD. I did not delete or remove any electronic information from either source in any manner.

19.     I restored the Lotus Notes backup account for Robert Linn, and downloaded them to CD. I did not delete or remove any electronic information from either source in any manner.

20.     I restored the Lotus Notes backup account for Cindy Keiser-Ellis, and downloaded them to CD. I did not delete or remove any electronic information from either source in any manner.

21.     I restored the Lotus Notes backup account for Alan Cannizzaro, and downloaded them to CD. I did not delete or remove any electronic information from either source in any manner.

22.     I restored the Lotus Notes backup account for Thomas Christian and downloaded it to CD. I did not delete or remove any electronic information in any manner.

23.     I restored the Lotus Notes backup account for Ron Smith and downloaded it to CD. I did not delete or remove any electronic information in any manner.

24.    I restored the Lotus Notes backup account for Stephen Omogbehin and downloaded it to CD. I did not delete or remove any electronic information in any manner.

25.    When I attempted to download Stephen Omogbehin's archived emails from his laptop computer I realized he had not archived his emails on the hard disk drive. Instead, he had archived his information to a shared HDD on the larger system network.

26.    However, in 2005, I had previously printed a copy of all of Stephen Omogbehin's Lotus Notes emails, both from the backup tape that included his inbox, as well as his archived emails that were stored on the shared HDD.

27.    Approximately 5000 pages of Stephen Omogbehin's printed email material (Lotus Notes backup and archived) were provided to Agency Counsel Jay Fox. This estimate is based upon the amount of produced printed material, which filled a box used for a standard case of copy paper.

28.    The shared HDD in which Stephen Omogbehin archived his information is no longer available. It was recycled as part of routine information technology maintenance procedures.

29.    In 2007 during the district court litigation, Gary Albert also asked me to download the archived emails of Shelley Yak, Sue Lake, Bob Linn, Cindy Keiser-Ellis, and Alan Cannizzaro. Because Thomas Christian and Ron Smith had left their employment by that time, their hard disk drives had been recycled and no archived information existed for them.

30.    In order to download the archived emails, I was given network access to a shared hard disk drive, where the above employees had placed their email archive folders. 1 downloaded the email folders provided to CDs for each of the individual employees.

31.    All of the information downloaded to CDs (in Lotus Notes format) were provided to Gary Albert.

DATED: 4/25/2008

Cleve Laswell,
Enterprise Data Center Project Manager
William J. Hughes Technical Center
Federal Aviation Administration
Department of Transportation

# Exhibit 7

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*
*Civil Division*

_____

970 Broad Street, Suite 700     general number: (973) 645-2700
Newark, New Jersey 07102              telephone: (973) 645-2892
                                                              fax: (973) 297-2010
                                            e-mail: Jafer.Aftab@usdoj.gov

3 August 2007

ELECTRONICALLY FILED

Hon. Joel Schneider, U.S.M.J.
Mitchell H. Cohen Federal Courthouse
One John F. Gerry Plaza
400 Cooper Street
Camden, NJ 08101

<u>Omogbehin v. Cino</u>
<u>Civil No. 06-4581</u>

Your Honor:

Please accept this letter brief, Declaration of Shelley Yak with Exhibit and attached letter to plaintiff, in opposition to plaintiff's motion to compel. There are two points. First, defendant has mooted plaintiff's request for the production of archived e-mail, because it has undertaken a significant effort to recover and produce the archived e-mail of the other employees and has already produced in paper form plaintiff's archived e-mail over two years ago. *See* Decl. of Shelley Yak; *see also* Ex. A attached thereto. Second, plaintiff has moved to compel on grounds that were not previously raised, in violation of Local Civil Rule 37.1. Accordingly, defendant sent a letter, attached hereto, to plaintiff seeking compliance therewith and advising plaintiff that defendant has nevertheless complied with plaintiff's demands.

The only properly raised issue for this Court is plaintiff's demand for the production of archived e-mail from a backup. Defendant submits that this issue is moot. Defendant undertook the significant effort to recover the archived e-mail and has now produced it in the requested digital format for the other four employees. As represented to this Court by plaintiff and defendant in the discovery conference, with regard to plaintiff's archived e-mail, defendant produced plaintiff's archived e-mail in paper form two years ago and plaintiff reviewed it in preparation for the administrative hearing. Nevertheless, plaintiff's archived e-mail is unavailable. At the time of his termination, plaintiff requested that his laptop be preserved. This request was honored. However, plaintiff, unlike other employees, stored his archived e-mail on a network drive. While the archived e-mail was produced prior to the administrative hearing in paper form, the network drive (upon which plaintiff's archived e-mail) was erased, inadvertently erasing plaintiff's archived e-mail. Thus, defendant cannot produce plaintiff's archived e-mail in digital form. Plaintiff and defendant alike only have resort to the paper form of plaintiff's archived e-mail.

Accordingly, this Court should determine that plaintiff's motion to compel the production of archived e-mail is moot.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

By:  /S/ Jafer Aftab
     JAFER AFTAB
     Assistant U.S. Attorney

Attachments

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*
*Civil Division*

_____

970 Broad Street, Suite 700     general number: (973) 645-2700
Newark, New Jersey 07102        telephone: (973) 645-2892
                                fax: (973) 297-2010
                                e-mail: Jafer.Aftab@usdoj.gov

VIA FEDEX

Dennis L. Friedman, Esq.                    23 July 2007
1515 Market Street, Suite 714
Philadelphia, PA 19102-1981

              Omogbehin v. Cino
              Civil No. 06-4581

Counsel:

       This letter serves as an effort to resolve the ongoing discovery dispute
relating to plaintiff's first set of interrogatories and requests for documents. Please
be advised that with regard to plaintiff's interrogatory number six, the response
and documents provided therewith are the only responses possible from the
agency -- that is, there is no official policy. The previous responses and production
of documents provide the backup practice.

       Furthermore, with regard to plaintiff's requests one through five to produce
archived e-mail, the outstanding issue discussed at the discovery conference, the
agency undertook a significant effort (nearly 80 hours overall) to produce the
archived material in the digital format that your client requested. The agency
could have avoided these costs by producing this information in a paper spool
printout, as previously provided at the administrative hearing, and reserves the
right to seek costs in opposition to the motion to compel. Nevertheless, enclosed
herein are the archived e-mail in the requested format with the hope that your
client consider withdrawing the motion to compel.

       Additionally, with regard to request nine to produce strategic planning
document, enclosed in our responses to the second set of interrogatories and
request for documents please find on the compact disc labeled "Response #1,"
strategic planning documents. Note that these were not previously produced,
because they did not match the request as written -- they are not "submitted" or
"approved by the FAA Tech Center." With regard to request ten, the previous
agency response was responsive.

       At your earliest opportunity, please advise me regarding your position
regarding the archived e-mail, the issue that remains outstanding from the
discovery conference. Also, please advise regarding the other outstanding issues
included in the motion to compel though not previously raised in the discovery
conference, so that we may attempt to resolve them pursuant to Local Civil Rule
37.1.

Sincerely,

CHRISTOPHER J. CHRISTIE
United States Attorney

By:   JAFER AFTAB
Assistant U.S. Attorney

CHRISTOPHER CHRISTIE
United States Attorney
BY: JAFER AFTAB
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. 973.645.2892
Fax. 973.297.2010
Jafer.Aftab@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Stephen Omogbehin,

       *Plaintiff,*

       v.

Maria Cino, Acting Secretary,
Department of Transportation,

       *Defendant.*

HON. JOSEPH E. IRENAS, U.S.D.J.

*Civil Action No.* 06-4581

DECLARATION OF SHELLEY YAK
WITH EXHIBIT

I, Shelley J. Yak, make this Declaration in support of the defendant's response to plaintiff's motion to compel, and state the following:

1.  I am the Manager of Center Operations at the William J. Hughes Technical Center ("Tech Center"), located adjacent to the Atlantic City International Airport.

2.  I was the selecting official when plaintiff was hired as an employee at the Tech Center.  His probationary employment began on September 7, 2003.

3.  I was the deciding official when plaintiff was removed from service. His removal date was April 23, 2004.

4.  At the request of the Assistant United States Attorney, e-mails were produced in response to Plaintiff's first request to produce documents numbers 1 through 5.

5.  In order to process these requests, (1) email system (known as Lotus Notes) backups were restored, (2) archived email was isolated within the date range of plaintiff's term of employment, and (3) all electronically produced material was personally reviewed by me with the assistance of Tech Center counsel.

6.  The aforementioned personal review comprised approximately 40 hours of duty time.

7.  Prior to these requests, on August 30, 2005, approximately 5000 pages of plaintiff's e-mail was produced in response to discovery requests made by plaintiff during the EEOC administrative proceedings (see Tech Center counsel's letter attached as Exhibit A).

Under penalty of perjury, I declare that to my knowledge the above is true.

Executed:   1 August 2007

By: _____
SHELLEY YAK



U.S. Department
Of Transportation

**Federal Aviation
Administration**

William J. Hughes
Technical Center

Office of the Center Counsel, ACT-7
Jay M. Fox

Atlantic City
International Airport
New Jersey  08405
(609) 485-7087
(609) 485-4920 (fax)

August 30, 2005

Kristen D. Alden, Esquire
Passman & Kaplan, PC
1090 Vermont Avenue NW, Suite 500
Washington, DC  20005

Re:   Omogbehin v. Mineta
      <u>EEOC Hearing No. 170-2005-00444X</u>

Dear Ms. Alden:

Attached please find the Agency's Response to Complainant's First Request for
Discovery.

The response includes a box containing approximately 5000 pages of requested
emails.  Given the voluminous response to your client's document request, I ask
that you identify in advance any documents and/or emails which you plan (or
may plan) to mark at depositions or the hearing.

Finally, if you have not already done so, the Agency is still awaiting responses to
the short request forwarded on July 22.

Very Truly Yours,



Jay M. Fox
Office of Center Counsel

JMF/bm
Attachments

Exhibit 8



**United States Department of Justice**
*United States Attorney*
*District of New Jersey*
*Civil Division*

402 E. State St., Room 430    general number: (609) 989-2190
Trenton, New Jersey 08608    telephone: (609) 989-0562
fax: (609) 909-2360
e-mail: Karen.Shelton@usdoj.gov

April 29, 2008

Dennis L. Friedman
1515 Market Street
Philadelphia, PA 19102-1907

Re:   <u>Omogbehin v. Cino</u>, CV No. 06-4581

Dear Mr. Friedman:

Enclosed please find DVDs (2) which contain mirror images of the contents of your client's laptop computer. Your copy is entitled "set 1"; I have retained a copy entitled "set 2". As stated in Defendant's Opposition to Plaintiff's Motion to Compel, Defendant believed that the discs already produced to Plaintiff contained this information. Upon receipt of your motion and in reviewing statements made by your client in his declaration, the discs were checked and Defendants realized at that time that only the Lotus Notes data from the laptop had been downloaded and produced. Accordingly, Defendant now produces the full mirror images of the laptop consistent with its discovery obligations. As also stated in our opposition, the desktop computer is no longer available; it has been salvaged.

It has also come to my attention that on the original CD (which we now know contained only the Notes files), as well as in the answer to request for production #10 (1st request to produce), the bar codes for the two computers (desktop tower and laptop) were reversed. The tower is listed as R00535 and the laptop is listed as R00318. Instead, the Tower should be correctly listed as R00318 and the Laptop should be correctly listed as R00535. The enclosed DVDs have been labeled with the correct bar code.

Additional discovery material -- items ordered by the Court following the conference on February 21, 2008 -- is being gathered and will be produced shortly.

Respectfully,

CHRISTOPHER J. CHRISTIE
United States Attorney

By:   KAREN H. SHELTON
Assistant United States Attorney

# Exhibit 9



**United States Department of Justice**
*United States Attorney*
*District of New Jersey*
*Civil Division*

_____

402 E. State St., Room 430    general number: (609) 989-2190
Trenton, New Jersey 08608         telephone: (609) 989-0562
                                              fax: (609) 909-2360
                               e-mail: Karen.Shelton@usdoj.gov


                                    June 23, 2009


Dennis L. Friedman
1515 Market Street
Philadelphia, PA 19102-1907

        Re:    <u>Omogbehin v. Cino</u>, CV No. 06-4581

Dear Mr. Friedman:

        Enclosed please find copies of the documents and 3 CDs you and your
client inspected at the FAA offices in the presence of agency counsel and requested
to be copied.  One file on one CD apparently was unable to be copied due to
damage; that file is indicated on the enclosed sheet.

                                    Respectfully,

                                    RALPH J. MARRA, JR.
                                    Acting United States Attorney


                             By:    KAREN H. SHELTON
                                    Assistant United States Attorney

# Exhibit 10

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEPHEN OMOGBEHIN,              .   Case No. 06-4581(JEI)
                               .
                               .
          v.                   .   1 John F. Gerry Plaza
                               .   4th & Cooper Streets
                               .   Camden, NJ 08101
MARIA CINO, Acting             .
Secretary, Department          .
of Transportation,             .
                               .
          Defendant.           .   February 21, 2008
. . . . . . . . . . . . . .     .   10:31 a.m.


            TRANSCRIPT OF STATUS AND DISCOVERY CONFERENCE
                 BEFORE HONORABLE JOEL SCHNEIDER
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:             DENNIS L. FRIEDMAN, ESQ.
                               1515 Market Street
                               Suite 714
                               Philadelphia, PA  19102

For the Defendant:             Office of the U.S. Attorney
                               By:  KAREN H. SHELTON, ESQ.
                               402 East State Street #430
                               Trenton, NJ  08608

Audio Operator:                Sarah Kilborn


Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311     Fax No.  (609) 587-3599**

1  wasn't in your papers.  We're going to go to the letter.  Okay?

2  So let's put aside the opening statement and closing statement.

3  Let's get to the issues in the letter starting on Page 1.

4  Okay?  What's the first issue, Ms. Shelton, that's set forth in

5  the letter.

6           MS. SHELTON:  With respect to the general concerns,

7  Your Honor, or do you want to go to the specific concerns --

8           THE COURT:  Well --

9           MS. SHELTON:  -- which begin on Page 2?

10          THE COURT:  Let's go to the specific issues.  We've

11  done enough of the general concerns.  What is the first issue?

12          MS. SHELTON:  With respect to the e-mails of

13  Christian and Smith, who I believe, Your Honor, are H.R.

14  personnel, the plaintiff had requested all e-mails for these

15  individuals, and because these people are H.R. personnel, not

16  every e-mail that goes to them or that they receive can be

17  produced to plaintiff for privacy concerns of the other

18  employees who are not parties to the case.

19          THE COURT:  Have you produced all of the e-mails of

20  these two employees relating to the plaintiff?

21          MS. SHELTON:  Yes, Your Honor, we have.

22          THE COURT:  So is the plaintiff requesting e-mails

23  concerning other employees besides himself?

24          MS. SHELTON:  Your Honor, I don't know what the

25  plaintiff is requesting beyond what we've produced.


**J&J COURT TRANSCRIBERS, INC.**

12

1          THE COURT:  All right.  Mr. Friedman, why -- if the

2   defendant has represented that they've produced the e-mails

3   from Christian and Smith regarding the plaintiff, why isn't

4   that sufficient?

5          MR. FRIEDMAN:  Because we strongly believe, based on

6   evidence that we already have, that there was spoliation of

7   evidence.  The information that the agency claims it had

8   supplied to us came exclusively from the electronically stored

9   information.

10          THE COURT:  My question is what is -- you have asked

11   for the e-mails of Christian and Smith regarding employees

12   other than the plaintiff.  Is that correct?

13          MR. FRIEDMAN:  Yes.

14          THE COURT:  My question is what is the relevance of

15   that information?

16          MR. FRIEDMAN:  The relevance of this information is

17   to show, number one, that the agency engaged in spoliation of

18   evidence, because there's an absence of information relating to

19   Stephen Omo --

20          THE COURT:  So you want to find out about every e-

21   mail that these two employees sent or received in order to

22   prove that there was spoliation?

23          MR. FRIEDMAN:  No, that is not what we want to do.

24   We want to show that as Human Resources Specialists, that they

25   regularly work with the management officials who were involved

**J&J COURT TRANSCRIBERS, INC.**

13

1  in the actual disciplining of employees.  These --

2         THE COURT:  So can't you cover that at their

3  depositions?

4         MR. FRIEDMAN:  Cover what?

5         THE COURT:  This question, how they deal with

6  management --

7         MR. FRIEDMAN:  Cover what question?

8         THE COURT:  How they deal with management personnel.

9         MR. FRIEDMAN:  Yes.  No, I think -- we haven't gotten

10 into the fact issues, because we're trying to get the documents

11 first that have been withheld.  And the purpose of getting the

12 documents is to show that Human Resources people regularly deal

13 with management personnel, and they communicate via e-mail, and

14 the e-mails show an interaction where they give advice, and

15 they have inquiries from management personnel as to how to deal

16 with problematic employees.  There is a total absence of any e-

17 mail information relating Stephen Omogbehin, and we contend

18 that the backup tapes would show that these individuals

19 regularly communicated --

20        THE COURT:  We're not talking about backup tapes

21 right now.  We're not -- we're talking about e-mails of

22 Christian and Smith.

23        MR. FRIEDMAN:  And that goes to the fundamental issue

24 of all of the information that they are supplying is coming

25 from the backup tapes.

**J&J COURT TRANSCRIBERS, INC.**

1    THE COURT:  We'll get to that.  We'll get to that.

2 Okay.  The Court is prepared to rule on the first issue on Page

3 2 of the January 31st, 2008 letter, Subsection A.  Plaintiff

4 has requested all e-mails of Christian and Smith.  The Court

5 denies that request as requesting irrelevant information.

6 Clearly, these employees, Christian and Smith, have to produce

7 their e-mails regarding the plaintiff.  Ms. Shelton has

8 represented that whatever e-mails are available from these two

9 individuals, Christian and Smith, regarding the plaintiff have

10 been produced.  They do not have to produce e-mails regarding

11 employees other than the plaintiff, because they're irrelevant

12 to the issues in the case.

13    MR. FRIEDMAN:  May I --

14    THE COURT:  No, you not, Mr. Friedman.  If plaintiff

15 wants to inquire of the dealings of Christian and Smith with

16 management personnel and what their general practice and

17 procedures were regarding communications with management

18 personnel, he can explore that at the depositions of Christian

19 and Smith.  Next issue.  We're not going back.  We're going

20 forward.  Next issue.

21    MR. FRIEDMAN:  Your Honor, before we get to the next

22 issue, you're making a ruling.  It is my understanding that

23 this is a pre-motion conference and we are -- we have not even

24 filed our motion papers.

25    THE COURT:  Mr. Friedman, local rules provide that a

**J&J COURT TRANSCRIBERS, INC.**

77

# C E R T I F I C A T I O N

We, PAT REPKO and KIMBERLY UPSHUR, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.

_____      DATE:   May 1, 2009
PAT REPKO

_____
KIMBERLY UPSHUR

J&J COURT TRANSCRIBERS, INC.

(JL&CR)

**J&J COURT TRANSCRIBERS, INC.**

# Exhibit 11



**United States Department of Justice**
*United States Attorney*
*District of New Jersey*
*Civil Division*

---

*402 E. State St., Room 430*
*Trenton, New Jersey 08608*

*general number:  (609) 989-2190*
*telephone: (609) 989-0562*
*fax: (609) 909-2360*
*e-mail: Karen.Shelton@usdoj.gov*

July 27, 2009

Dennis L. Friedman
1515 Market Street
Philadelphia, PA 19102-1907

   Re: <u>Omogbehin v. Cino</u>, CV No. 06-4581

Dear Mr. Friedman:

   In response to various assertions made in your motion for spoliation, I made inquiries of agency counsel regarding the production of email made prior to my appearance in this case.  As you know, Defendant produced email on CDs to Plaintiff in 2007.  Unfortunately, Defendant's prior counsel did not retain copies of those CDs for the U.S. Attorney's files, although agency counsel retained the source files from which the CDs were produced.

   Following discussions with the agency regarding the 2007 production and your motion, I learned that the archived email which was produced by Defendant in 2007 only contained email through April 23, 2004, rather than through April 27, 2004.   Apparently, prior counsel for Defendant determined that only email through Plaintiff's term of employment - which ended on April 23, 2004 - were relevant to the litigation, and therefore only produced emails through that date.

   However, the agency had, in fact, preserved and retained other archived email from the same source files - including email through April 27, 2004 for certain witnesses.  In response to this information, I requested another search for email archives from the hard drives of the remaining witnesses.  The previously preserved archives through April 27 and the recently acquired archives through April 27 are now produced herein in CD format.  I have also enclosed declarations of the persons responsible for producing the CDs regarding the method of production.

        Respectfully,

        RALPH J. MARRA, JR.
        Acting United States Attorney

By: KAREN H. SHELTON
    Assistant United States Attorney