UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                  :
STEPHEN OMOGBEHIN,                :
                                  :
          Plaintiff,              :        HONORABLE JOSEPH E. IRENAS
                                  :        CIVIL ACTION NO. 06-4581 (JEI/JS)
     v.                           :
                                  :               OPINION
                                  :
RAY LAHOOD, SECRETARY,            :
U.S. DEPARTMENT OF                :
TRANSPORTATION,                   :
                                  :
          Defendant.              :
```

**APPEARANCES:**

LAW OFFICES OF DENNIS L. FRIEDMAN
1515 Market Street, Suite 1000
Philadelphia, PA 19102
          Counsel for Plaintiff

PAUL J. FISHMAN, UNITED STATES ATTORNEY
By: Karen Shelton, A.U.S.A.
402 East State Street
Trenton, New Jersey 08608
          Counsel for Defendant

**IRENAS**, Senior District Judge:

Plaintiff, Stephen Omogbehin, a former civilian IT Operations Manager with the Federal Aviation Administration (FAA), brings this Title VII, 42 U.S.C. § 2000e, et seq., discrimination / retaliation suit against his former employer, the Department of Transportation ("the government").[1] Omogbehin asserts that he suffered discrimination on account of his race /

---

[1] This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

color (African / black) and national origin (Nigerian),[2] and retaliation for telling his supervisor that he intended to pursue equal employment opportunity (EEO) remedies on account of her alleged discriminatory treatment of him.

Presently before the Court is the government's Motion for Summary Judgment.  For the reasons stated herein, the motion will be denied.

### I.

Omogbehin was still a probationary employee at the FAA "Tech Center" in Atlantic City, New Jersey when he was terminated on April 23, 2004.  Viewing Omogbehin's evidence (which consists mainly if his own statements by way of declaration[3]) in the light most favorable to him, Omogbehin completed many projects during his seven-month tenure.  (Pl's Ex. 12)  Indeed, the undisputed record demonstrates that many people, including his supervisor,

---

[2]  At his administrative hearing before the EEOC, Omogbehin also asserted that he suffered gender discrimination.  However, his Complaint in this case does not appear to assert gender discrimination (see Compl. ¶¶ 21-22), and his papers in opposition to the government's motions do not address gender discrimination (see, e.g. Opposition Brief at p. 2), even though the government assumes this case includes a gender discrimination claim.  Accordingly, the Court concludes that Omogbehin has abandoned his gender discrimination claim.

[3]  Omogbehin testified at a deposition and then again at his EEOC hearing, yet he submits very few pages of his own testimony in support of his claims.  On the other hand, the government relies extensively on the transcripts of Omogbehin's testimony.

Shelley Yak, gave him positive feedback about his work.  (Pl's
Ex. 11)  According to Omogbehin, he "was a stellar performer and
achieved extraordinary results that previously had never been
imagined."  (Compl. ¶ 10)

Thus, Omogbehin asserts, he was blind-sided by his
termination, and he believes that unlawful discrimination and
retaliation must have been the cause.  In support of his claims,
Omogbehin relies on the undisputed facts that he is of African
descent, and Nigerian-born; and he once told his supervisor that
he planned to seek EEO counseling about her alleged
discrimination against him.  Omogbehin's declaration states,

> I specifically requested the [March 25, 2004] meeting
> [with Shelley Yak] because I wanted to discuss . . .
> the fact that [Yak] wasn't fully supporting me as a
> manager, as she was Gary Albert.  I informed Mrs. Yak
> that I felt she was discriminating against me and
> that, if it continued, I intended to go to the office
> of the civil right [sic] and Human Resources to file
> a discrimination claim.

(Omogbehin Decl. ¶ 47[4])  It is undisputed that Omogbehin never
did make a complaint following the meeting.  According to

---

[4]  The government has moved to strike this declaration,
asserting that it fails to comply with the local rules and is
rife with conclusory arguments and hearsay, rather than
admissible facts.  While the government's objections are well-
founded, Omogbehin's declaration, submitted under the penalty of
perjury, does at least contain scattered facts that are based
upon his personal knowledge.  To be sure, the declaration is far
from a model of clarity, but striking the entire document is not
appropriate.  The Court relies on the declaration only to the
extent that it contains admissible facts as opposed to argument
or hearsay.  The government's motion to strike will be denied.

Omogbehin, another employee dissuaded him from doing so.  (Id.)

In response to Omogbehin's assertions, the government states that Yak decided to terminate Omogbehin during his probationary period because of (1) his adversarial personality and management style, which was evidenced in his: (a) walking out of business meetings, (b) disobeying his supervisor's instructions by attempting to establish "team leads" within his group when Yak had abolished team leads, and (c) threatening a subordinate employee with insubordination in an email which was carbon copied to the employee's peers; and (2) his dissatisfactory work on one important project.

Omogbehin disputes nearly all of the government's proffered reasons, "categorically denying" that he ever walked out any business meetings, or that he ever disobeyed Yak's instructions. He also asserts that he was not responsible for the undisputedly deficient work product that Yak attributed to him.  With regard to the email, Omogbehin states that he inadvertently "replied to all" when emailing his subordinate that failure to follow directions would be "consider[ed] . . . an act of insubordination."  (Pl's Ex. 33) Omogebehin also notes that the undisputed documentary evidence shows that he later publicly apologized for the comment.  (Id.)

After his termination, Omogbehin fully pursued his EEO remedies.  In August, 2006, after a two-day evidentiary hearing,

the ALJ found for the government on all of Omogbehin's claims.
This suit followed.  Omogbehin asserts disparate treatment
discrimination and retaliation, in violation of Title VII.[5]

## II.

This Court reviews the discrimination and retaliation claims
*de novo*.  *See Makky v. Chertoff*, 489 F. Supp. 2d 421, 428 (D.N.J.
2007) *aff'd by* 541 F.3d 205 (3d Cir. 2008).

"[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'"  *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

---

[5]  The underlying EEO complaint is typed in single-spaced 8-
point font and occupies 11 pages.  It identifies a host of wrongs
which Omogbehin asserts he suffered in his seven months with the
FAA.  Not all of those alleged wrongs form the basis of
Omogbehin's present suit.  The Court's adjudication of this suit
is necessarily limited to the claims asserted in the instant
Complaint.
    Notably, while the Complaint contains many detailed factual
allegations regarding Omogbehin's performance on various FAA
projects (see e.g., Compl. ¶ 10), it is much less detailed about
the alleged conduct that forms the foundation of his claims.
Indeed, even after a full evidentiary hearing before the EEOC,
Omogbehin's Complaint contains only four vague sentences directly
supporting his claims of discrimination and retaliation.  (See
Compl. ¶¶ 17-19)  The Court has liberally construed the Complaint
with an eye toward the underlying administrative record.
However, the Court will not address theories or claims not within
a broad interpretation of the facts alleged in the instant
Complaint.

56(c)).  In deciding a motion for summary judgment, the Court
must construe the facts and inferences in a light most favorable
to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*,
794 F.2d 860, 864 (3d Cir. 1986).  The role of the Court is not
"to weigh the evidence and determine the truth of the matter, but
to determine whether there is a genuine issue for trial."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"'With respect to an issue on which the non-moving party
bears the burden of proof, the burden on the moving party may be
discharged by 'showing'– that is, pointing out to the district
court – that there is an absence of evidence to support the
nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. &
Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*).
"The plain language of Rule 56(c) mandates the entry of summary
judgment . . . against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial.  In such a situation, there can be 'no genuine
issue as to any material fact,' since a complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial."  *Celotex*, 477
U.S. at 322; Fed. R. Civ. P. 56(e) (A party opposing summary
judgment cannot rest upon the "mere allegations or denials of the
adverse party's pleading" but must respond with affidavits or

depositions setting forth "specific facts showing that there is a genuine issue for trial.").

### III.

### A.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual . . . because of such individual's race, color, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1).

Where, as here, there is no direct evidence of discrimination, the *McDonnell Douglas*[6] burden-shifting framework applies.

### 1.

Omogbehin must first establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he is qualified for the position in question; (3) he suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999).

---

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

7

With regard to proving the fourth element of the prima facie case-- the only element in dispute here-- the Third Circuit has repeatedly emphasized that analytical flexibility is required. "'[T]he fourth element must be relaxed in certain circumstances,'" *Pivirotto*, 191 F.3d at 357 (quoting *Torre v. Casio, Inc.*, 42 F.3d 825, 831 (3d Cir. 1994)), in order "'to fit the circumstances of each type of illegal discrimination.'" *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (quoting *Geraci v. Moody-Tottrup, Int'l Inc.*, 82 F.3d 578, 581 (3d Cir. 1996)). Thus, Omogbehin must only establish "some nexus between" his race or national origin and his termination "that would permit a fact-finder to infer unlawful discrimination." *Id.* at 366.

To establish an inference of discrimination, Omogbehin relies on his evidence (albeit his own sworn statements) that Yak had no reason to fire him. According to Omogbehin, every reason Yak gave for his termination (but one) is completely false: he never walked out of meetings, he never disobeyed Yak's instructions, and he did not perform the deficient work Yak attributed to him. As for the "insubordination" email, Omogbehin admits that he sent it, but asserts that firing him for one mistaken "reply all," for which he publicly apologized, was a wholly disproportionate response. Omogbehin therefore argues that if a jury believed all of his evidence, jurors could

8

reasonably conclude that in the absence of a valid reason for his termination, illegal discrimination must be the reason.

But the mere absence of a valid reason for termination, alone, does not support an inference of discriminatory motive. (Indeed, to so hold would severely undermine the at-will employment doctrine.)  There must be some other evidence that affirmatively demonstrates a "nexus" between membership in a protected class and the adverse employment action.  *Doe*, 527 F.3d at 365.  Without the critical nexus, no "rebuttable presumption of discrimination" can arise.   *Id.*

"The evidence most often used to establish this nexus is that of disparate treatment, whereby a plaintiff shows that [he] was treated less favorably than similarly situated employees who are not in plaintiff's protected class."  *Doe*, 527 F.3d at 366. In this regard, the record, when viewed in the light most favorable to Omogbehin, demonstrates that Gary Albert, a white probationary manager, also used or attempted to use "team leads" in his group and was not fired, or even disciplined (Pl's Exs. 1-2, 9); whereas Yak relied on Omogbehin's attempted use of team leads as one of the reasons for his termination.

The Court concludes that this evidence-- that Gary Albert was not disciplined for behavior that Yak states was one basis for Omogbehin's termination-- is sufficient to establish a nexus between his race and his termination; thereby establishing the

only disputed element of his prima facie case.[7]

## 2.

The government has satisfied its burden of putting forth non-discriminatory reasons for Omogbehin's termination: (1) his adversarial personality and management style, which was evidenced in his: (a) walking out of business meetings, (b) disobeying his supervisor's instructions by attempting to establish "team leads" within his group when Yak had abolished team leads, and (c) threatening a subordinate employee with insubordination in an email which was carbon copied to the employee's peers; and (2) his dissatisfactory work on one important project.

However, Omogbehin has sustained his burden of demonstrating pretext by "discrediting the proffered reasons, either circumstantially or directly." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

As noted earlier, Omogbehin states under penalty of perjury that he never walked out of meetings, and he has put forth evidence from which a factfinder might conclude that Albert used

---

[7] The government argues that Omogbehin and Albert were not similarly situated because Albert was Omogbehin's "first line supervisor." (Gov't Moving Br. at p. 12)  The record, however, is not entirely clear about the organizational relationship between Albert and Omogbehin.  For example, on many occasions Albert and Omogbehin jointly met with, and reported to, Yak.  (See Gov't Exs. 5, 12, 14)  Additionally, both men held the same title of "Supervisory Computer Scientist."  (Gov't Exs. 23, 24)  Thus, issues of material fact preclude summary judgment on this ground.

team leads without any repercussions.  Omogbehin has also put forth evidence that could support the conclusion that he was not responsible for the dissatisfactory work Yak complained-of. (Omogbehin Decl. ¶ 33, Pl's Ex. 42)  Lastly, while Omogbehin admits he did send the "insubordination" email, he states that he inadvertently sent it to other people, and then later apologized for the comment.  (Omogbehin Decl. ¶ 21; Pl's Ex. 34)

This evidence, when viewed collectively in the light most favorable to Omogbehin, could support a finding that almost all of Yak's reasons for Omogbehin's termination are simply false, and that as to the insubordination email, termination was a disproportionate response.

Accordingly, the government's Motion for Summary Judgment as to the discrimination claim must be denied.

## B.

Title VII also prohibits retaliation for opposing race and national origin discrimination.  *See* 42 U.S.C. § 2000e-3.  In presenting his prima facie case, Omogbehin must establish: (1) he engaged in activity protected by Title VII; (2) he suffered an adverse employment action; and (3) a causal connection between (1) and (2).  *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006).

To the extent Omogbehin's retaliation claim is based on his

assisting a disabled subordinate employee with her accommodation
request, Omogbehin has failed to state a claim under Title VII.
Title VII prohibits discrimination only on the basis of "race,
color, religion, sex, or national origin."  42 U.S.C. §
2000e-2(a)(1).  While, of course, other civil rights statutes do
prohibit disability discrimination and related retaliation,
Omogbehin's Complaint does not assert any such cause of action.
Moreover, allowing him leave to amend after a full EEO
adjudication and more than three years of litigation in this
Court would prejudice the government.  Accordingly, the
government's Motion will be granted to the extent that the
retaliation claim is based on activity not protected by Title
VII.

However, Omogbehin has put forth sufficient evidence
supporting a retaliation claim based on the theory that he
complained directly to Yak that she was discriminating against
him.  Omogbehin states under penalty of perjury that on March 25,
2004, he raised concerns with Yak "that she wasn't fully
supporting [him] as a manager, as she was Gary Albert," and he
"informed Yak that [he] felt she was discriminating against
[him], and that if it continued, [he] intended to go to the
office of civil right [sic] and Human Resources to file a
discrimination claim."  (Omogbehin Decl. ¶ 47)  Ten days later,
on April 4, 2004, Yak began drafting Omogbehin's termination

letter. (Yak Decl. ¶ 50; Gov't Ex. 18) On April 24, 2004, she fired him.

The government argues that Omogbehin did not engage in any protected activity, however, a reasonable factfinder could conclude otherwise.  Viewing the record in the light most favorable to Omogbehin, it supports the reasonable conclusion that by complaining to Yak about her disparate treatment of Omogbehin and Albert, Omogbehin opposed actions prohibited by Title VII.  *See Moore*, 461 F.3d at 343 ("'Opposition' to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

Thus, the Court holds that Omogbehin has established a prima facie case of retaliation.  Additionally, as set forth above, while the government provides lawful reasons for Omogbehin's termination, Omogbehin has marshaled sufficient evidence to support a finding of pretext.  *See Moore,* 461 F.3d at 342 (explaining that the *McDonnell Douglas* framework applies to retaliation claims).  Accordingly, the government's motion for summary judgment on the retaliation claim, insofar as it is based on Omogbehin's complaint to Yak, must be denied.

## IV.

For the reasons sated above, the government's Motion for

13

Summary Judgment will be denied, except as to Omogbehin's retaliation claim based on his assisting a disabled employee.  An appropriate order will be issued.


Date: June 28, 2010

                              s/ Joseph E. Irenas
                        JOSEPH E. IRENAS, S.U.S.D.J.